NOTICE

Decision filed 09/15/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200395-U

NO. 5-20-0395

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 19-CF-341 |
| | ) | |
| DENNIS S. TATE, | ) | Honorable |
| | ) | Allan F. Lolie Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The defendant's right to a speedy trial was not violated where the defendant did not make a sufficient demand for a trial as required by the speedy trial statute. The defendant's sentence was not excessive nor an abuse of discretion.

¶ 2    The defendant appeals his convictions and sentence for five counts of aggravated criminal sexual abuse. The defendant argues that his right to a speedy trial was violated due to delays associated with the COVID-19 pandemic and that his sentence was excessive. For the following reasons, we affirm the defendant's convictions and sentence.

1

¶ 3                          I. BACKGROUND

¶ 4     On September 13, 2019, the State charged the defendant with five counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(b), (c)(1)(i) (West 2018) previously codified as 720 ILCS 5/12-16(b), (c)(1)(i)) (counts I-V) and one count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018) previously codified as 720 ILCS 5/12-14.1(a)(1)) (count VI). The victims in this case, Dovie Kirtley and Roxann Johnson, are the defendant's stepdaughters, who are now adults. The alleged offenses occurred between 1994 and 2002, when Kirtley and Johnson were children.

¶ 5     On September 14, 2019, the defendant was arrested. A bond was set, but the defendant remained in custody. Following a preliminary hearing and arraignment, the trial court set the defendant's case for a jury trial on December 9, 2019.

¶ 6     On November 21, 2019, the defendant moved for a continuance of his trial date, and the trial court reset the defendant's trial for January 21, 2020, with the delay attributed to the defendant. On January 9, 2020, the defendant again moved for a continuance of his trial date, and the trial court subsequently set the defendant's trial for April 13, 2020. The delay was attributed to the defendant.

¶ 7     On March 31, 2020, the defendant's jury trial was continued a third time. On this date, the following occurred on the record:

        "THE COURT: Then we have 19-CF-341 and 342, Dennis Tate.

        [THE STATE]: Same thing as the other in custody juries.

        [DEFENSE COUNSEL]: Same objection.

        THE COURT: Okay. You got it."

2

The docket entry for this day provides as follows: "Pursuant to Administrative Order 2020-4,[1] as amended, over defendant's objection, jury setting vacated. Reset for jury trial 6/8/20 ***.''

¶ 8    On May 21, 2020, the defendant's jury trial was once again continued pursuant to Administrative Order 2020-4 and over the defendant's objection. The defendant's jury trial was reset for July 13, 2020. The record does not contain a transcript of proceedings for this date, and the court reporter indicated that she did not have any notes pertaining to the defendant's case.

¶ 9    On June 23, 2020, the defendant agreed to waive his right to a jury trial and proceed to a bench trial on counts I through V in exchange for the State's dismissal of count VI. The trial court accepted the defendant's waiver and set the case for a bench trial on August 4, 2020.

¶ 10    On July 2, 2020, the defendant filed a motion to dismiss, alleging a violation of his right to a speedy trial under section 103-5(a) of the Code of Criminal Procedure of 1963 (speedy trial statute) (725 ILCS 5/103-5(a) (West 2018)). In his motion, the defendant argued that the orders continuing his trial due to the COVID-19 pandemic violated the separation of powers doctrine and attempted to rewrite section 103-5(a) of the speedy trial statute. Following a hearing on the defendant's motion, the trial court denied the defendant's motion. The trial court stated that any delay was not charged to the State or the

---

[1]In response to the COVID-19 pandemic, the Illinois Supreme Court entered several orders in March and April 2020 which allowed the chief judge in each circuit to continue trials. The orders provided that such continuances would not be attributable to the State or the defendant, and the delays would be excluded from speedy trial computations.

defendant due to the supreme court's order that was generated by necessity because of the COVID-19 outbreak.

¶ 11　At the defendant's bench trial, his stepdaughters, Kirtley and Johnson, testified about the sexual abuse the defendant committed against them when they were children. Kirtley testified that when she was a child, she lived in Sandoval, Illinois, with her mother, the defendant, and her five younger siblings, one of whom was her sister, Johnson. After the birth of Kirtley's fifth sibling, her mother was diagnosed with multiple sclerosis. Her mother's health and mobility gradually declined, and she began to suffer seizures. Kirtley testified that during the summer between her second and third grade years, when she was eight or nine years old, the defendant began to come into her room while Kirtley slept, and he would lay beside her. Kirtley testified that the defendant would remove her underwear, place his penis between her "butt cheeks," and move his penis back and forth for five to 10 minutes. Kirtley recalled hearing the defendant moaning and grunting while he did this. The defendant also rubbed Kirtley's vagina. When asked if the defendant ever penetrated her vagina, Kirtley responded, "Not fully. Maybe to like the first knuckle or something like that." Kirtley stated that during these encounters, she pretended to be asleep and would "squirm" to get the defendant to stop.

¶ 12　Kirtley indicated that these encounters occurred almost nightly. During this time, Kirtley sometimes shared a bedroom with Johnson but never witnessed the defendant abuse Johnson. Kirtley never told anyone about the sexual abuse because, when she was a child, she and her siblings were told that too much stress on their mother could cause her to have

a seizure and die. The sexual abuse stopped when Kirtley was approximately 14 or 15 years old. She stopped pretending to be asleep and told the defendant she was awake.

¶ 13    Johnson testified that the defendant began to molest her when she was six or seven years old. She stated that the defendant would frequently enter her room at night, play with her clitoris, place his penis between her upper thighs or "butt cheeks," and move his penis back and forth. Johnson indicated that she could hear the defendant grunting. Johnson testified that this happened at least one time in the living room. Johnson also recalled an occasion when the defendant made her perform oral sex on him in the bathroom.

¶ 14    When Johnson was 12 or 13 years old, she was afraid the defendant would try to take things further, and she would get pregnant. Johnson found the courage to stand up to the defendant and began telling him to stop whenever he tried to sexually abuse her. She did not tell anyone about the abuse because she was afraid of endangering her mother's health and causing a hardship for her family as the defendant was the primary provider. Johnson indicated that she never witnessed the defendant sexually abuse Kirtley.

¶ 15    After the State rested, the defendant testified and categorically denied the allegations made against him. The trial court found the defendant guilty on counts I through V.

¶ 16    The defendant filed a posttrial motion alleging that the trial court erred in denying the defendant's pretrial motion to dismiss and that the State had failed to prove the defendant guilty beyond a reasonable doubt. The trial court denied the defendant's posttrial motion at his sentencing hearing.

¶ 17   The presentence investigation report (PSI) that had been prepared for sentencing provided that the defendant had no criminal history, but had two charges for aggravated criminal sexual abuse pending in Marion County, Illinois, 19-CF-342. Regarding his health, the defendant reported that he had a total of 13 strokes, with the most recent being in 2019. The defendant indicated that this was the worst stroke he had suffered, and that he was required to go to a nursing home for rehabilitation. The PSI noted that while incarcerated in the jail, the defendant was under the care of Advanced Correctional Care and was taking numerous medications.

¶ 18   An "Adult Psychosexual Evaluation Report" was also prepared for sentencing. The evaluator noted that the defendant attempted to "fake good" and present himself as "unrealistically virtuous." The defendant also attempted to portray himself as without interest in sexuality. The evaluator determined that the defendant was not a reliable reporter regarding his own experiences. The evaluator stated that the defendant engaged in manipulative deception in areas related to sexuality but also observed that the defendant experienced a significant level of cognitive dysfunction. The evaluator found the defendant was a below average, to average risk of recidivism for a sexual offense, mostly attributable to the defendant's age. The evaluator cautioned that the defendant may be an outlier for his age demographic because the defendant was charged with conduct that occurred after he turned 60. The evaluator concluded that the defendant's risk level was low enough that community treatment and management would typically be recommended but stated that the defendant was not capable of benefitting from cognitive behavioral therapy, the core method of intervention for sex offense specific treatment. The evaluator recommended that

6

if the defendant received a community-based sentence, he should not have contact with minors. The evaluator further recommended that if the defendant was in a care facility, the staff should be advised about his sexual interest in children to appropriately monitor and maintain safety precautions. The evaluator indicated that the defendant may benefit from pharmacological intervention to decrease the risk of problematic sexual behaviors.

¶ 19    At sentencing, Johnson read victim impact statements for both herself and Kirtley which detailed the impact the sexual abuse had on their lives. As evidence in aggravation, the State called Deputy Jordan Johnson, Kim Tucker, and Kayla Essington to testify about the charges pending in 19-CF-342.

¶ 20    Deputy Jordan Johnson was dispatched on April 8, 2018, to the residence of Essington and Donnie Hulsey, the parents of the victims H.E. and A.E., who were five years old and eight years old, respectively. Essington reported that she had another daughter, April Tate, who was 23 years old and lived nearby. April lived with her husband Jacob Tate, their children, and the defendant. H.E. and A.E. often visited April's children and sometimes stayed the night or the weekend. It was reported that the defendant had nude photographs of H.E. on his phone. According to Deputy Johnson's investigation, the defendant showed a family member, Kyle Rose, the photographs and asked Rose if he could delete the photographs from the defendant's phone. Rose and April subsequently showed the photographs to Essington and Hulsey.

¶ 21    After the photographs came to light, Essington asked H.E. and A.E. if the defendant had touched them. H.E. and A.E. both stated the defendant had touched them inappropriately. Deputy Johnson interviewed H.E. and A.E. Both girls indicated that the

7

defendant had touched their vaginas. H.E. reported that the defendant asked her to take the photographs that were located on his phone. The children were subsequently interviewed at the Amy Center by Kim Tucker. The forensic interviews were recorded and played at the defendant's sentencing hearing. Essington testified that A.E. and H.E. were attending counseling. Essington stated that since late April to early May 2018, A.E. was more aggressive toward others and having trouble sleeping at night. A.E. was also failing school and enrolled in special education courses, although she had not been diagnosed with any learning disability. Essington testified that she had not noticed any changes with H.E. This concluded the State's evidence in aggravation.

¶ 22 The defendant presented no evidence in mitigation. In allocution, the defendant claimed that he provided for his family but that nobody wanted to help him as his health declined. He maintained his innocence and accused the victims and their families of lying.

¶ 23 Before pronouncing sentence, the trial court indicated that it had considered the PSI, the psychosexual evaluation, the trial evidence, the evidence in aggravation, and the defendant's statement in allocution. In mitigation, the trial court found that incarceration may endanger the defendant's medical condition but noted the defendant had been incarcerated for 424 days and appeared to be getting the treatment he required. The trial court also found the defendant's lack of criminal history in mitigation.

¶ 24 In aggravation, the trial court found that the defendant's conduct caused or threatened serious mental harm to Kirtley and Johnson based upon their trial testimony and victim impact statements. The trial court noted that in addition to the five counts of conviction, the court had heard evidence at trial that the defendant's abuse of Kirtley and

8

Johnson was ongoing for a period of time. The trial court also found that a sentence of imprisonment was necessary to deter others. Regarding the allegations of sexual abuse involving H.E. and A.E., the trial court found that the State had presented reliable evidence and considered the allegations in aggravation.

¶ 25    In consideration of the defendant's rehabilitative potential, the trial court noted that the psychosexual evaluation found the defendant to be a low risk to reoffend but expressed concern about the defendant's attempts to deceive the interviewer. The trial court indicated that had the defendant gotten treatment and not committed "another act," the trial court likely would have given the defendant probation. The trial court determined, however, that a sentence of imprisonment was necessary to protect the public, which included children, and that a sentence of probation would deprecate the seriousness of the offense. The trial court sentenced the defendant to seven years' imprisonment on each count, to be served concurrently, followed by two years of mandatory supervised release.

¶ 26    The defendant filed a motion to reduce sentence. The defendant argued that the trial court did not give adequate weight to various mitigating factors and gave undue weight to the pending charges. Following a hearing, the trial court denied the defendant's motion to reduce sentence. At this hearing, the State dismissed the pending charges in 19-CF-342. This appeal followed.

¶ 27                                    II. ANALYSIS

¶ 28                              A. Speedy Trial Violation

¶ 29    The defendant contends that the trial court erroneously denied the defendant's motion to dismiss his case after he had been detained for more than 120 days pursuant to

9

Administrative Order 2020-4. The defendant argues that between September 14, 2019, and June 23, 2020, there were at least 152 days that he did not consent to delaying his trial—68 days between September 14, 2019, and November 21, 2019, and 84 days between March 31, 2020, and June 23, 2020. We agree with the defendant that the time between September 14 and November 21 is not attributable to him. The defendant, however, orally moved for continuances on November 21, 2019, and January 9, 2020. The trial court granted these continuances, causing the delays to be attributable to the defendant. The subsequent delays on March 31 and June 23 are also considered agreed to by the defendant as further explained hereafter.

¶ 30    The speedy trial statute provides that, "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***." 725 ILCS 5/103-5(a) (West 2018). To prove a violation of the speedy trial statute, the defendant is only required to prove that he or she has not been tried within the period set by the statute and that he or she has not caused or contributed to the delays. *People v. Murray*, 379 Ill. App. 3d 153, 158 (2008). Any delay occasioned by the defendant tolls the speedy-trial period until the delay expires, at which point the statute resumes running. *Murray*, 379 Ill. App. 3d at 158. It is the defendant's burden to establish that delays were not attributable to his or her conduct. *Murray*, 379 Ill. App. 3d at 158. Delay is attributable to the defendant when his or her acts caused or contributed to the delay, resulting in the postponement of trial. *Murray*, 379 Ill. App. 3d at 158-59.

10

¶ 31 The speedy trial statute provides that "[d]elay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2018). Although the speedy trial statute does not require any " 'magic words' constituting a demand for trial," the statute does require "some affirmative statement in the record requesting a *speedy* trial." (Emphasis in original.) *People v. Phipps*, 238 Ill. 2d 54, 66 (2010). The demand should not be disguised in ambiguous language. *Murray*, 379 Ill. App. 3d at 160.

¶ 32 In *Murray*, defense counsel objected to the delay, stated that she was ready for trial, and specifically stated her desire that the delay be attributed to the State. *Murray*, 379 Ill. App. 3d at 161. The *Murray* court found this statement sufficient to invoke the speedy trial statute, reasoning that defense counsel's language would be used only in reference to the defendant's speedy trial right. *Murray*, 379 Ill. App. 3d at 161. Conversely, at a separate hearing where substitute counsel appeared, substitute counsel announced a readiness for trial and objected to the delay, but did not specifically ask for trial or use language that would reference the speedy trial statute. *Murray*, 379 Ill. App. 3d at 161. The *Murray* court found this was insufficient to affirmatively invoke the speedy trial statute. *Murray*, 379 Ill. App. 3d at 161. The appellate court noted that the trial court made no finding that this objection rose to the level of a speedy trial demand. *Murray*, 379 Ill. App. 3d at 161. The *Murray* court stated: "In the absence of language clearly showing an intent to invoke the speedy-trial statute and without a specific finding by the trial court, there is not an affirmative and unambiguous request for a speedy trial on the record." *Murray*, 379 Ill. App. 3d at 161.

11

¶ 33    More recently, our supreme court found the following insufficient to invoke the defendant's speedy trial right: " 'Judge, he's in custody. Ready for trial. Please note my objection to the state's motion.' " *People v. Hartfield*, 2022 IL 126729, ¶¶ 34-38. The supreme court found that the language of the speedy trial statute required more than a mere objection to delay to invoke the statutory speedy trial right. *Hartfield*, 2022 IL 126729, ¶ 35. The defendant must object specifically by demanding trial. *Hartfield*, 2022 IL 126729, ¶ 35. The supreme court also recognized that the trial court's interpretation of the objection is relevant because where the trial court recognizes the objection as a demand for trial, "there is a more complete understanding that an affirmative demand has been made and understood." *Hartfield*, 2022 IL 126729, ¶ 37.

¶ 34    Here, the defendant's trial was continued twice at his request. On March 31, 2020, the defendant objected to a further continuance of his trial by making the "[s]ame objection" as the "the other in custody juries." The report of proceedings does not show what that objection was. In the docket entry for that date, the trial court simply noted that the defendant's trial was continued pursuant to Administrative Order 2020-4 over the defendant's objection. On May 21, 2020, there is no report of proceedings for this date. The docket entry for this date also provided that the defendant's trial was continued pursuant to Administrative Order 2020-4 over the defendant's objection. No written demand for trial was filed on either of these dates. As the record shows, defense counsel did not specifically ask for trial or use any language clearly showing an intent to invoke the speedy trial statute. There is no indication in the record that the trial court considered the defendant's objection as a demand for a speedy trial. Consistent with *Murray* and

12

*Hartfield*, we find that the defendant's objections were insufficient to invoke the speedy trial statute on March 31 and May 21. Consequently, no statutory speedy trial violation occurred.

¶ 35                           B. The Defendant's Sentence

¶ 36    The defendant contends that his seven-year sentence, the maximum allowed sentence, was excessive where the statutorily preferred sentence was probation. The defendant argues that the trial court gave insufficient weight to the mitigating factors in the defendant's case and gave undue weight to the charges pending against the defendant at the time of sentencing.

¶ 37    It is well settled that the trial court has broad discretion in fashioning a sentence. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Reviewing courts will not disturb the trial court's sentencing decision, absent an abuse of discretion. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26. The trial court is given great deference at sentencing because the trial court, having observed the defendant and the proceedings, is in a superior position than the reviewing court to consider the relevant sentencing factors. *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). The trial court has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Stacey*, 193 Ill. 2d at 209. Consequently, a reviewing court may not substitute its judgment for that of the trial court merely because the reviewing court would have weighed the pertinent factors differently. *Stacey*, 193 Ill. 2d at 209.

¶ 38    Although the trial court has broad discretion in sentencing, its discretion is not without limitation. *Stacey*, 193 Ill. 2d at 209. Reviewing courts have the power to reduce a

13

defendant's sentence pursuant to Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967). This power, however, should be exercised cautiously and sparingly. *Alexander*, 239 Ill. 2d at 212.

¶ 39 At sentencing, the trial court is required to consider the evidence at trial and the PSI. 730 ILCS 5/5-4-1(a)(1), (2) (West 2020). The trial court is also permitted to consider certain statutory factors in aggravation (730 ILCS 5/5-5-3.2 (West 2020)) and mitigation (730 ILCS 5/5-5-3.1 (West 2020)). Absent some indication to the contrary, reviewing courts presume the trial court considered all relevant factors in crafting a sentence. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). The trial court is not required to enumerate or assign a value to each factor presented at sentencing. *Etherton*, 2017 IL App (5th) 140427, ¶ 29. Moreover, "[t]he existence of mitigating factors does not mandate imposition of the minimum sentence [citation] or preclude imposition of the maximum sentence [citation]." *Flores*, 404 Ill. App. 3d at 158.

¶ 40 A sentence that falls within the statutorily prescribed range will not be found excessive or an abuse of discretion unless it greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Etherton*, 2017 IL App (5th) 140427, ¶ 28. The spirit and purpose of the law are promoted when the trial court's sentence reflects both the seriousness of the offense and the defendant's rehabilitative potential. *Etherton*, 2017 IL App (5th) 140427, ¶ 28. The most important factor for the trial court to consider is the seriousness of the offense. *Etherton*, 2017 IL App (5th) 140427, ¶ 28.

14

¶ 41    Here, the defendant's sentence was neither excessive nor an abuse of discretion. The record shows that the trial court carefully considered the evidence presented at trial and sentencing, the PSI, the psychosexual evaluation, and the defendant's statement in allocution. The record also shows that the trial court considered the relevant statutory factors in aggravation and mitigation, the defendant's rehabilitative potential, and whether probation would be an appropriate sentence for the defendant.

¶ 42    We do not find that the trial court gave insufficient weight to the mitigating factors in the defendant's case, or that the trial court gave undue weight to the charges pending against the defendant at the time of sentencing. After considering the evidence and information before it, the trial court determined that probation would deprecate the seriousness of the offense and that a sentence of imprisonment was necessary to protect the public. We also do not find that the defendant's sentence varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. The evidence showed that the defendant sexually abused his stepdaughters over a period of several years. The trial court found that the State presented reliable evidence that the defendant sexually abused his grandchildren many years later. Thus, we will not disturb the defendant's sentence.

¶ 43    For the foregoing reasons, the defendant's convictions and sentence are affirmed.


¶ 44    Affirmed.