**2025 IL 130207**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 130207)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee v.
JATTERIUS L. YANKAWAY, Appellant.

*Opinion filed April 24, 2025.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

Justice Overstreet specially concurred, with opinion.

**OPINION**

¶ 1       Jatterius L. Yankaway, the defendant, was arrested on April 7, 2020, because it was alleged that he shot Robert Hunter on July 26, 2019. Prior to his arrest, this court entered an emergency order related to the coronavirus pandemic, which tolled speedy-trial terms in criminal proceedings. See *In re Illinois Courts Response to*

*COVID-19 Emergency/Impact on Trials*, Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020). On June 30, 2021, this court entered a second order restoring the time restrictions of the speedy-trial statute, effective October 1, 2021. *In re Illinois Courts Response to COVID-19 Emergency/Impact on Trials*, Ill. S. Ct., M.R. 30370 (eff. June 30, 2021). On September 19, 2022, a jury found Yankaway guilty of attempted first degree murder, aggravated battery, and unlawful possession of a weapon by a felon (UPWF), but he remained incarcerated after his April 7, 2020, arrest and after his September 28, 2020, guilty plea on an unrelated weapons charge. The Peoria County circuit court sentenced Yankaway to consecutive prison terms for the attempted murder and aggravated battery convictions but reserved sentence on the UPWF conviction.

¶ 2        On appeal, as relevant here, Yankaway argued that (1) he received ineffective assistance when counsel failed to file a speedy-trial demand pursuant to section 3-8-10 of the Unified Code of Corrections (intrastate detainers statute) (730 ILCS 5/3-8-10 (West 2020)), (2) his convictions for attempted first degree murder and aggravated battery violated the one-act, one-crime rule, and (3) the circuit court misapprehended the minimum sentence Yankaway faced for attempted first degree murder.

¶ 3        The appellate court affirmed in part, concluding that counsel was not ineffective for filing a speedy-trial demand under the wrong statute because Yankaway could not show counsel's deficient performance caused prejudice and the circuit court did not commit plain error in its sentence for Yankaway's attempted murder conviction. 2023 IL App (4th) 220982-U, ¶¶ 70-71. The appellate court vacated Yankaway's aggravated battery conviction pursuant to the one-act, one-crime doctrine and remanded for sentencing on his UPWF conviction. *Id.*

¶ 4        We allowed Yankaway's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2021). For the following reasons, we affirm that part of the appellate court's judgment regarding counsel's effectiveness, but on different grounds, and we affirm the sentencing for Yankaway's convictions. We also vacate that part of the judgment of the appellate court remanding for sentencing on Yankaway's UPWF conviction.

¶ 5                                    I. BACKGROUND

¶ 6            On July 26, 2019, Robert Hunter—Yankaway's cousin—was shot several times
in a Peoria alley. Hunter survived and eventually identified Yankaway as one of the
two men who shot him. Yankaway was arrested on April 7, 2020, and on April 9,
2020, was charged in Peoria County (case No. 20-CF-212) with attempted first
degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2018)), with aggravated battery
with a firearm (*id.* § 12-3.05(e)(1)), and with UPWF (*id.* § 24-1.1(a)).

¶ 7            On April 30, 2020, Yankaway was charged in a second Peoria County case
(case No. 20-CF-238) with a UPWF offense unrelated to Hunter's shooting (*id.*).
The State elected to prosecute case No. 20-CF-238 first. On September 28, 2020,
Yankaway pleaded guilty and was sentenced to a period of seven years in the
Department of Corrections (DOC) followed by a period of two years' mandatory
supervised release. Yankaway was transferred from the Peoria County Jail to the
Pinckneyville Correctional Center on October 15, 2020, having been in custody at
the Peoria County Jail since his arrest on April 7, 2020.


¶ 8                                  A. The Circuit Court

¶ 9                              1. Initial Pretrial Proceedings

¶ 10           Yankaway filed a *pro se* speedy-trial demand on April 24, 2020. Defense
counsel entered his appearance on April 29, 2020, and initially requested a trial date
of December 14, 2020. At a hearing on October 5, 2020, the parties agreed to a jury
trial, which was set for January 25, 2021. On January 14, 2021, the State moved to
continue because of an unavailable witness, but defense counsel objected, and the
court reset trial for April 26, 2021.

¶ 11           On April 8, 2021, the State moved to continue trial because of "some ballistics
work that still needed to be done on the items of evidence that were collected."
Defense counsel did not object, and trial was reset for August 30, 2021.

¶ 12                                2. August 19, 2021, Hearing

¶ 13        On August 19, 2021, with trial set to begin in 11 days, the State moved for a continuance because Hunter—who was in prison at the Robinson Correctional Center—was unavailable to serve as a witness because of a COVID-19 lockdown. The circuit court continued the trial over defense counsel's objection that "My client was planning to go to trial." The court entered an order granting the continuance, stating that "the People move for a continuance" and setting a November 4, 2021, scheduling conference and a November 15, 2021, trial date.

¶ 14        At that scheduling conference on November 4, 2021, the circuit court received defense counsel's motion to withdraw and a request from Yankaway for a new lawyer. Yankaway complained that defense counsel "ain't got enough time for" him, as they had only met three times that year. The court observed that this was due to Yankaway's incarceration and denied the motion as "disingenuous" and "for purposes of delay." The court explained that defense counsel knew the case better than anyone else and that Yankaway would remain at the Peoria County Jail until the November 15 trial date, so he could "talk to [counsel] all [he would] like."

¶ 15                                3. November 15, 2021, Hearing

¶ 16        On November 15, 2021, the circuit court observed that it had three trials all involving Yankaway's attorney set to begin immediately—with Yankaway's trial being the last of the three. And the court said that, although it could set Yankaway's trial for that day, the court noted that the trial was "on the bubble for tomorrow," so that it could start if the first two cases concluded, but that plan might be "just a little too ambitious."

¶ 17        The court suggested continuing the case until December 2021 but acknowledged that "we're picking back up with the speedy trial counts" and accordingly offered to "cram" Yankaway's trial onto its December docket, even though "it would be very tough" to do so. The court then inquired of defense counsel his preference. Counsel replied that he preferred a "January or February" trial date because his own "December calendar [was] pretty crowded" and thus he could not "even begin getting ready for trial."

- 4 -

¶ 18    The court explained that it "could remand [defendant] back to Pinckneyville" and set trial for "late January or February" on "your motion to continue." The court confirmed with defense counsel that "You'd move to continue and then allow [us] to set a date that's convenient for all in January or February." Defense counsel replied "Yeah. My client wants to be returned to Pinckneyville, so that would be agreeable." The court then asked Yankaway if he was okay with that, to which defendant responded "Yes, sir."

¶ 19    The court suggested the dates of February 17, 2022, for review and February 28, 2022, for trial, to which counsel for both the defense and the State agreed. The court explained that Yankaway could return to the jail from prison on February 17—giving Yankaway "a week and a half or so" to consult with defense counsel. The circuit court granted a continuance, and the November 15, 2021, order stated "The defendant move[s] for a continuance." The order further explained that the continuance was "by agreement of the parties due to the court's trial calendar."

¶ 20                          4. February 24, 2022, Hearing

¶ 21    On February 23, 2022, the State filed a written motion for a continuance pursuant to section 114-4(d) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-4(d) (West 2020)) and Illinois Supreme Court Rule 413(a)(vii) (eff. July 1, 1982), seeking to conduct buccal swabbing of Yankaway. The court continued the case until the next day.

¶ 22    At the February 24 hearing, the court observed that Hunter was "either in the Department of Corrections or very closely about to be paroled" and that Yankaway himself was in prison. The court pointed out that the case had "been around forever," although it was "nobody's fault." The court discussed Yankaway's and Hunter's incarceration, *habeas* issues, and COVID-19 lockdowns, which made the case "complicated" given the logistical difficulties. And though the court noted that it would not bring Hunter and Yankaway back to the Peoria County Jail indefinitely to await trial just so the parties could consult with them in person, it was "willing to accommodate" the parties "if it looks like we're getting toward a meaningful goal."

¶ 23     The court further noted that it had learned from the State that Hunter was apparently under another COVID-19 lockdown. Thus, for "those issues that [the court] tried to describe on the record," the court concluded that it was "not practical" to think that trial would begin as scheduled.

¶ 24     The court planned to pick a date that was both "logical" for "conclud[ing the case] by some disposition, by trial, or plea" and would also "allow lawyers to have an opportunity to talk with whoever they need to talk to more than just a day ahead of time." The court noted that it had too many cases in May and there would be a problem with Memorial Day. The court proposed setting a June 2022 trial and separate scheduling conference for April 2022 so that the State and defense counsel could meet with Hunter and Yankaway, respectively.

¶ 25     Defense counsel replied that Yankaway wanted to stay in the Peoria County Jail "until the trial is over." The court stated it would deny that request and again suggested the parties pick a scheduling conference day in April. That way, the court explained, the parties could each "assess where [their] case[s] [were] and get done what needs to be done between April and June." After discussing several trial dates and the court stating, "I'm not married to any of those dates," the State proposed a July 11 trial date, to which defense counsel responded, "that's fine." The court's order stated that "[t]he Parties move(s) for a continuance" and trial was continued from February 28, 2022, to July 11, 2022. The court also ordered that Yankaway be returned to court on April 14, 2022, and delayed ruling on the State's motion to obtain a buccal swab from Yankaway.

¶ 26                    5. *Pro Se* Motion and April 14, 2022, Hearing

¶ 27     On March 7, 2022, Yankaway moved to proceed *pro se* in a written motion. Yankaway alleged that defense counsel was ineffective because he had infrequently consulted with Yankaway since April 2020 and that counsel "did not honor" his request that he "want[ed] a speedy trial." Yankaway stated he did not want to be counsel's client any longer. The pleading included a letter addressed to "Court Room 221," stating "I don't want no continuance if it did not come out of my mouth." On March 25, 2022, in a letter addressed to "Court Room 221 Judge Kevin Lyons," Yankaway again reiterated that he wanted to discharge his counsel and "I also want to put on record I want a speedy trial."

¶ 28    Yankaway appeared with counsel at the April 14, 2022, scheduled conference. At that time, defense counsel filed an objection to the pretrial order of February 24, 2022, arguing that he "did not approve of said continuance and did not toll the Defendant's speedy trial rights." After the court granted the State's motion for a buccal swab, the court asked whether there was "[a]nything else we need to do." Defense counsel replied that he "need[ed] to have access to my client," and the court urged counsel to "drive down there" (to Pinckneyville) or to consult with Yankaway by phone. The court said it would permit Yankaway to return a "little bit" before trial, advising counsel to "go visit him in the meantime." Neither Yankaway's *pro se* pleading nor defense counsel's objection were brought to the attention of or addressed by the court.

¶ 29                    6. June 30, 2022, Hearing and Related Proceedings

¶ 30    On June 29, 2022, the State moved to continue the July 11, 2022, trial because of the unavailability of witnesses who were being called to testify. At the hearing on June 30, 2022, the court granted the motion over defense counsel's objection that Yankaway "want[ed] his speedy trial rights." The court then questioned whether there was a 120-day requirement in this case, to which defense counsel responded "Yes, there is."

¶ 31    The State maintained that 53 days had elapsed on what it assumed was "the 120-day [speedy-trial] term," and the court expressed concern about the possibility that the trial might be untimely if continued until September. Subsequently, the State clarified that only 46 untolled days had passed at that point. The court explained that it did not "have time to put this in July or August," lest other trials "get bumped." The court thus continued the trial until September 19, 2022, and scheduled a status hearing on August 10, so the parties could "review the case so that he can have his trial within 120 days, if needed."

¶ 32    Following the hearing, defense counsel filed a speedy-trial demand under section 103-5 of the Code of Criminal Procedure of 1963 (speedy-trial statute) (725 ILCS 5/103-5 (West 2020)). In a *pro se* letter dated July 13, 2022, addressed to court room 221, Yankaway stated that he believed that his speedy-trial term had exceeded 120 days, and he requested that during the next court date his days be recounted. He further stated that he never gave up his right to a speedy trial.

¶ 33    At the August 10, 2022, status hearing, the court confirmed that Yankaway was incarcerated at the Pinckneyville Correctional Center with a release date of September 2023 and that trial would begin on September 19, 2022. The court observed "I don't think there is a speedy trial issue because you can't get out anyway."

¶ 34    On September 8, 2022, at the pretrial hearing, the court asserted that it would not permit any further continuances. Defense counsel asked that Yankaway remain at the Peoria County Jail until trial, prompting the court to ask whether counsel had ever "been down to see him in Pinckneyville." Counsel responded that he had not "on this case." The court granted the request and reiterated that the September 19 date was firm because it was not "interested *** in having [defendant] here, there, here, there, and [the case] never gets anywhere."

¶ 35                    7. Yankaway's Motion to Dismiss

¶ 36    On September 15, 2022, defense counsel filed a motion to dismiss Yankaway's case due to a speedy-trial violation pursuant to section 103-5(a) of the speedy-trial statute (725 ILCS 5/103-5(a) (West 2020)). Defense counsel argued that Yankaway's speedy-trial term began on October 1, 2021, and was 120 days. He maintained that the continuances of November 15, 2021, February 24, 2022, and June 30, 2022, delayed trial by 228 days not attributable to Yankaway, that those 228 days exceeded the 120-day term limit, and that Yankaway's case should be dismissed.

¶ 37    At the hearing on the motion held on September 19, 2022, defense counsel conceded that the November 15, 2021, continuance was "on both parties' motion" but argued that the remaining continuances were attributable to the State. Specifically, regarding the February 24, 2022, continuance, defense counsel alleged that the continuance was not agreed to and that the State had prepared the court's order falsely stating that Yankaway had agreed to the continuance.

¶ 38    The State responded that the allegation was itself "false." The State pointed out that defense counsel overlooked that Yankaway had another case—the separate weapons charge—which the State had elected to prosecute first. Thus, the State had "160 days to try this case" from the September 28, 2020, judgment on the guilty

plea in that prior case. Yankaway's trial was timely because only 128 untolled days had elapsed since that prior judgment. Defense counsel replied that the applicable speedy-trial term was 120 days and that it ran automatically starting on October 1, 2021.

¶ 39                                    8. The Circuit Court

¶ 40        The court denied Yankaway's motion to dismiss, stating that the separate case concluded during the period of the suspension of speedy-trial terms. The court found that the 160-day term applied because Yankaway had a second case and the State did elect to proceed on it. Therefore, the State would have 160 days from the day that the suspension was lifted. The court found that it was "within that time frame of being prosecuted." The court further explained that the February 28, 2022, continuance was "by agreement" and not "lodged against the State."

¶ 41                                    9. The Trial and Verdict

¶ 42        Yankaway's trial commenced on September 19, 2022. Hunter testified that, on the night of the shooting, he was driving with Yankaway and two other men. After getting out of the car with Yankaway and one other, Hunter saw Yankaway and the other man with guns. They started shooting at him, and he saw flashes. Hunter then called 911 while Yankaway and the other men left.

¶ 43        At the jury instruction conference, the State sought a special interrogatory on whether Yankaway was armed with a firearm during the shooting, which finding was necessary for the imposition of a 15-year enhancement on the attempted first degree murder charge (720 ILCS 5/8-4(c)(1)(B) (West 2018)). The State opted not to seek a 20-year enhancement for personal discharge of a firearm (*id.* § 8-4(c)(1)(C)). On September 22, 2022, the jury found Yankaway guilty of all charges and found under the special interrogatory that Yankaway was armed with a firearm during the commission of the attempted murder.

10. Yankaway's Posttrial Motions and Sentence

¶ 45        On October 24, 2022, defense counsel filed a motion for judgment notwithstanding the verdict, claiming that Yankaway's trial was untimely because he was not tried within 120 untolled days that ran automatically starting on October 1, 2021. Yankaway claimed for the first time that the February 28, 2022, continuance was not attributable to him because the State had "falsely stated" that Hunter was under a COVID-19 lockdown, when in fact Hunter had been released from prison on February 15, 2022, and could not be located.

¶ 46        The circuit court denied the motion because it was "clear that the Defendant was tried within a timely fashion." The court referred to the challenges presented by COVID-19 lockdowns and Yankaway's incarceration while his "lawyer in Peoria *** was doing his best to represent him." The court attributed several of the continuances to the defense, saying "that it was defendant who hobbled the case along in a somewhat slow fashion" and "it was the defendant who continuously wanted another court date, and we'd give it to him," remarking that the case "got so lengthy" that perhaps Yankaway "wanted to make a claim if things didn't go well, I have a speedy trial issue."

¶ 47        On October 26, 2022, the matter proceeded to sentencing. The State argued that the sentencing range for attempted first degree murder, "with the 20-year add-on," was "26 to 50 years." Regarding the UPWF conviction, the State asked the court to enter a "finding without a judgment." Yankaway did not dispute the State's description of the applicable sentencing ranges.

¶ 48        In sentencing Yankaway, the court reasoned that Yankaway was "overwhelmingly guilty" and that his crimes were "stunning" because he and Hunter were cousins and friends. And, after considering the statutory matters in aggravation and mitigation, the court stated:

          "You, [defendant], are the person that the community needed to be afraid of, but, worse than that, your own family, your own family, and your own friend needed to be afraid of you.

          Now, maybe, maybe your view or maybe the way you cope with this is to say that he was going to kill me first. I don't see any evidence of that, but, either

way, as difficult as this is for me to say, you are the reason prisons are built. ***

* * *

I can't think of another case off the top of my head where the Defendant has been so cavalier, not in a rude way, I think you've not been rude, here you've been cordial, for the most part, but it's a shame that you picked a life of prison and not a life of Peoria."

¶ 49 The court sentenced Yankaway to 44 years for attempted murder—"44 years being a 26-year minimum because it's a 20-year tack-on with a six-year minimum"—and 26 years for aggravated battery. The court declined to enter sentence on the UPWF verdict.

¶ 50 The court specifically stated:

"[I]t's the order and judgment of the Court that the Defendant *** be sentenced in Count 1, attempt first-degree murder, a Class X felony, to a term in [DOC] of 44 years. That it be followed by a period of three years of mandatory supervised release known as parole. That it be served at its 85 percent rate.

It will be mandatorily consecutive to Count 2 as a matter of law. 44 years being a 26-year minimum because it's a 20-year tack-on with a six-year minimum. 44 years in total. It should be served at the mandatory consecutive rate in Count 2. Judgment is entered on Count 1.

On Count 2, for aggravated battery, for 26 years, and that that be served with three years of mandatory supervised release as well.

Judgment will be entered on both Counts 1 and Count 2.

A finding will be entered on the unlawful possession of a weapon by a felon in Count 3, but judgment will not be entered."

¶ 51 On November 7, 2022, Yankaway filed a motion to reconsider his sentence arguing that his 70-year sentence was excessive. Yankaway did not claim that the circuit court misunderstood the sentencing range for attempted murder. On the same day, the circuit court held a hearing on Yankaway's motion. The court denied

the motion and reaffirmed the sentence. Yankaway filed a timely notice of appeal on November 8, 2022, and an amended notice of appeal on December 2, 2022.

¶ 52                                    B. The Appellate Court

¶ 53        The appellate court affirmed in part, reversed in part, and remanded. 2023 IL App (4th) 220982-U, ¶ 71. First, the court agreed that counsel had performed deficiently by failing to file a speedy-trial demand under the intrastate detainers statute; thus, Yankaway's speedy-trial term never started. *Id.* ¶ 42. The court concluded that Yankaway could not show prejudice because Yankaway's claim required speculation on whether his trial would have been timely had counsel filed a demand. Second, the court found that the circuit court did not commit plain error in sentencing Yankaway for attempted murder, because the court's misunderstanding did not "arguably influenc[e]" the sentence—as required by *People v. Eddington*, 77 Ill. 2d 41 (1979). 2023 IL App (4th) 220982-U, ¶¶ 58-60. Finally, the court vacated Yankaway's aggravated battery conviction and remanded for sentencing on the UPWF conviction. *Id.* ¶¶ 52, 54. In doing so, the court noted that "[d]efendant d[id] not challenge" the State's request for a remand (*id.* ¶ 54) and opined that entering judgment on the conviction would not raise one-act, one-crime concerns (*id.* ¶ 55).

¶ 54        This court granted Yankaway's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 55                                       II. ANALYSIS

¶ 56        In this appeal, Yankaway argues that he received ineffective assistance from defense counsel, where counsel did not file a speedy-trial demand under the intrastate detainers statute. See 730 ILCS 5/3-8-10 (West 2020). Yankaway also argues that defense counsel performed deficiently when he did not object to the February 28, 2022, continuance but, rather, acquiesced. Yankaway contends that he disavowed defense counsel's acquiescence and it should not be attributable to him. Yankaway further maintains that the circuit court abused its discretion in attributing the continuance to him and denying his motion to dismiss. Yankaway maintains that he was prejudiced by his counsel's deficient performance.

Yankaway asks that his convictions be reversed. Alternatively, Yankaway argues that the circuit court's misapprehension of the minimum sentencing range he faced for attempted first degree murder influenced its sentencing decision and was plain error. Yankaway seeks remand for resentencing on his attempted first degree murder sentence.

¶ 57     The State responds that defense counsel was not required to file a speedy-trial demand under the intrastate detainers statute and, thus, did not give deficient performance. The State contends that defense counsel's acquiescence was attributable to Yankaway and the circuit court did not abuse its discretion in finding so. The State also contends that Yankaway's claim of ineffective assistance of counsel fails because he cannot show prejudice. Finally, the State asserts that the circuit court did not commit plain error in sentencing Yankaway. The parties agree, and we find, that the appellate court erred in remanding for sentencing on Yankaway's UPWF conviction. Therefore, that part of the appellate court judgment remanding the case for sentencing on the UPWF conviction is vacated.

¶ 58                              A. Standard of Review

¶ 59     This court reviews *de novo* a claim of ineffective assistance of counsel (*People v. Moore*, 207 Ill. 2d 68, 75 (2003)), as well as questions of statutory interpretation (*People v. Cordell*, 223 Ill. 2d 380, 389 (2006)). In a statutory speedy-trial case, a circuit court's determination as to whether a period of delay is attributable to the defendant and how much delay to attribute is entitled to great deference, and a reviewing court will not interfere with that decision absent a clear abuse of discretion. *People v. Walker*, 232 Ill. 2d 113, 125 (2009). An abuse of discretion occurs only where the circuit court's ruling is arbitrary, fanciful, or so unreasonable that no reasonable person could take the circuit court's view. *People v. Ortega*, 209 Ill. 2d 354, 359 (2004).

¶ 60                    B. Ineffective Assistance of Counsel Standard

¶ 61     To determine whether Yankaway was denied his right to effective assistance of counsel, we apply the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting *Strickland*).

- 13 -

Under *Strickland*, it is the defendant's burden to show both (1) that his attorney's actions constituted errors so serious as to fall below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced defendant. *People v. Johnson*, 2021 IL 126291, ¶ 52.

¶ 62    Under the first prong of the *Strickland* test, the defendant must prove that his counsel's performance fell below an objective standard of reasonableness, as measured against prevailing professional norms. *People v. Colon*, 225 Ill. 2d 125, 135 (2007) (citing *Strickland*, 466 U.S. at 694). Under the second prong, the defendant must show that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004) (citing *Strickland*, 466 U.S. at 687). To prevail, the defendant must satisfy both prongs of the *Strickland* test. *Colon*, 225 Ill. 2d at 135. The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Id.*

¶ 63                           C. Yankaway's Speedy-Trial Rights

¶ 64    Yankaway claims defense counsel was ineffective for failing to adequately assert his right to a speedy trial. Yankaway possesses both statutory and constitutional rights to a speedy trial. See 725 ILCS 5/103-5(a) (West 2020); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. This appeal involves only his statutory right.

¶ 65            1. Defense Counsel Was Not Required to File a Speedy-Trial
                    Demand Pursuant to the Intrastate Detainers Statute

¶ 66    Yankaway contends that defense counsel was required but failed to file a speedy-trial demand under the intrastate detainers statute to start his speedy-trial term. In response, the State contends that the plain language of section 103-5(e) of the speedy-trial statute shows that Yankaway was not required to file a speedy-trial demand pursuant to the intrastate detainers statute, as his speedy-trial term started automatically. 725 ILCS 5/103-5(e) (West 2020).

¶ 67　　　　In addressing the parties' contentions, we must resort to principles of statutory interpretation. *People v. Lane*, 2023 IL 128269, ¶ 11. The primary objective of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Casler*, 2020 IL 125117, ¶ 24. All other canons and rules of statutory construction are subordinate to this principle. *Id.* The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id.* If the language of the statute is clear, this court must give effect to its plain and ordinary meaning without resort to other aids of statutory construction. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007). A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. *Casler*, 2020 IL 125117, ¶ 24. We review issues of statutory construction *de novo*. *Doe v. Burke Wise Morrissey & Kaveny*, 2023 IL 129097, ¶ 20.

¶ 68　　　　The General Assembly has codified three subsections in the speedy-trial statute. *People v. Wooddell*, 219 Ill. 2d 166, 174 (2006). Within each subsection of the speedy-trial statute, the legislature has prescribed different time periods and demand requirements for offenders who are differently situated. *People v. Sandoval*, 236 Ill. 2d 57, 65 (2010) (citing *People v. Staten*, 159 Ill. 2d 419, 424, 430 (1994)). "We assume that differentiation is the result of reasoned consideration and is not without consequence." *Id.*

¶ 69　　　　Subsection (a) of the speedy-trial statute provides that a defendant in custody must be tried within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant. 725 ILCS 5/103-5(a) (West 2020). Subsection (b) of the speedy-trial statute provides that "[e]very person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant." *Id.* § 103-5(b).

¶ 70　　　　Subsection (e) of the speedy-trial statute is a distinct provision providing:

"If a person is simultaneously in custody upon more than one charge pending against him in the same county, or simultaneously demands trial upon more than one charge pending against him in the same county, he shall be tried, or adjudged guilty after waiver of trial, upon at least one such charge before expiration relative to any of such pending charges of the period prescribed by

- 15 -

subsections (a) and (b) of this Section. Such person shall be tried upon all of the remaining charges thus pending within 160 days from the date on which judgment relative to the first charge thus prosecuted is rendered pursuant to the Unified Code of Corrections ***." *Id.* § 103-5(e).

¶ 71　　　The intrastate detainers statute applies to defendants who are incarcerated in a DOC facility and who have charges pending in any county. The intrastate detainers statute provides:

"Except for persons sentenced to death, subsection (b), (c) and (e) of Section 103-5 of the Code of Criminal Procedure of 1963 shall also apply to persons committed to any institution or facility or program of the Illinois Department of Corrections who have untried complaints, charges or indictments pending in any county of this State, and such person shall include in the demand under subsection (b), a statement of the place of present commitment, the term, and length of the remaining term, the charges pending against him or her to be tried and the county of the charges, and the demand shall be addressed to the state's attorney of the county where he or she is charged with a copy to the clerk of that court and a copy to the chief administrative officer of the Department of Corrections institution or facility to which he or she is committed. *** A person serving a period of parole or mandatory supervised release under the supervision of the Department of Corrections, for the purpose of this Section, shall not be deemed to be committed to the Department." 730 ILCS 5/3-8-10 (West 2020).

¶ 72　　　The State contends that section 103-5(e), by its plain terms, does not require Yankaway to file a speedy-trial demand to start the 160-day clock for his remaining charges. See 725 ILCS 5/103-5(e) (West 2020). Rather, section 103-5(e) operates similarly to section 103-5(a), in that the clock automatically begins. Section 103-5(e) required that Yankaway's trial begin within 160 untolled days from the date of judgment on the first charge prosecuted. Yankaway was sentenced on this charge on September 28, 2020. See *id.* § 103-5(a), (e).

¶ 73　　　Relevant here, Yankaway resided in the Peoria County Jail from April 7, 2020, until he reported to prison on October 15, 2020, to serve his sentence for his weapons charge. Section 103-5(e) provides that, if a person is simultaneously in custody upon more than one charge pending against him in the same county, he

shall be tried upon all of the remaining charges thus pending within 160 days from the date on which judgment relative to the first charge thus prosecuted is rendered. *Id.* § 103-5(e). Under the plain language of section 103-5(e), Yankaway's speedy-trial term automatically began on September 28, 2020. See *id* § 103-5(e); *In re Illinois Courts Response to COVID-19 Emergency/Impact on Trials*, Ill. S. Ct., M.R. 30370 (eff. Mar. 2020) (providing that continuances related to Covid-19 shall be excluded from statutory speedy-trial calculations). But due to COVID-19 speedy-trial restrictions, the 160-day term began on October 1, 2021. As we stated in *People v. Kliner*, 185 Ill. 2d 81, 123 (1998), where a defendant is simultaneously in custody for more than one charge, the State must bring him to trial on one of those charges within 120 days of his arrest and must try him on the remaining charge within 160 days from the rendering of judgment on the first charge. See *People v. Brown*, 92 Ill. 2d 248, 255 (1982) (where defendant was simultaneously in custody on all charges, the 160-day limitations period commenced when defendant was sentenced on his first prosecuted charge). The September 28, 2020, judgment for Yankaway's weapons charge automatically started the State's obligation to bring Yankaway to trial within 160 untolled days on the remaining charges.

¶ 74     We find that the intrastate detainers statute does not apply to Yankaway because he was simultaneously in custody upon more than one charge pending in the same county when the State elected to prosecute a charge and was not committed to any institution or facility or program of the DOC as would be required by section 3-8-10 (730 ILCS 5/3-8-10 (West 2020)). See *Staten*, 159 Ill. 2d at 422-23 (defendants incarcerated in the DOC who have charges brought against them—defendant was charged with possession of a dagger-like weapon by a person committed to a facility of the DOC—are subject to the intrastate detainers statute); *People v. Patterson*, 392 Ill. App. 3d 461, 465-66 (2009) (the intrastate detainers statute applies only to persons committed to the custody of DOC); *People v. Penrod*, 316 Ill. App. 3d 713, 718 (2000) (the intrastate detainers statute is a particular enactment that only applies to persons committed to the custody of the DOC).

¶ 75     The appellate court held that "[d]efendant was subject to the Intrastate Detainers Statute because he was incarcerated when the State proceeded on the charges in the case below." 2023 IL App (4th) 220982-U, ¶ 36. In support, the appellate court relied on *People v. Jackson*, 235 Ill. App. 3d 732, 736 (1992), and *People v. Willis*,

235 Ill. App. 3d 1060, 1063 (1992). 2023 IL App (4th) 220982-U, ¶ 38. We find the appellate court's reliance on these cases misplaced because the facts are different in *Jackson* and *Willis*—both defendants were incarcerated in the DOC when charges were filed against them. *Jackson*, 235 Ill. App. 3d at 736; *Willis*, 235 Ill. App. 3d at 1065. Therefore, their speedy-trial demands on those charges were subject to the intrastate detainers statute.

¶ 76    Here, the appellate court was incorrect when it held that Yankaway was subject to the intrastate detainers statute because it failed to recognize that Yankaway was not committed to the DOC when the State proceeded on one of his charges. Yankaway was in custody in the Peoria County Jail when he was charged with his second UPWF offense and when the State elected to prosecute this charge (case No. 20-CF-238). This court has determined that, under section 103-5(e), the speedy-trial period on the second charge is tolled until a judgment is rendered on the first charge. See *Kliner*, 185 Ill. 2d at 123; 725 ILCS 5/103-5(e) (West 2020). Therefore, section 103-5(e) determined Yankaway's speedy-trial rights, which started automatically, and defense counsel was not required to file a demand to start Yankaway's speedy-trial term. Consequently, counsel's failure to file a demand pursuant to the intrastate detainers statute was not deficient performance.

¶ 77                2. Defense Counsel Performed Deficiently When He Failed
                to Object to the February 28, 2022, Continuance

¶ 78    Yankaway argues that his defense counsel performed deficiently when defense counsel failed to object to the February 28, 2022, continuance. Yankaway maintains that, because of defense counsel's deficient performance in acquiescing to the continuance, his trial was held outside the applicable 160-day speedy-trial term.

¶ 79    This court has determined that counsel must assert defendant's right to a speedy trial when a continuance of a defendant's trial is granted. *People v. Hartfield*, 2022 IL 126729, ¶ 35; *Kliner*, 185 Ill. 2d at 123 (the 160-day period from the judgment on the first charge is only tolled if the requisite circumstances occur with respect to the second charge, including a delay by the defendant or an interlocutory appeal). The defendant may not camouflage his intent or hide the demand from the prosecutor's notice. *People v. Huff*, 195 Ill. 2d 87, 94 (2001). Rather than agreeing, the defendant must make an objection to any continuance to make sure that the

continuance is attributed to the State. *Cordell*, 223 Ill. 2d at 390-91; *People v. Tate*, 2022 IL App (5th) 200395-U, ¶ 32.

¶ 80         Here, the record reveals that Yankaway had informed defense counsel of his demand for a speedy trial prior to counsel agreeing to the continuance and counsel failed to object to the February 28, 2022, continuance. See *Hartfield*, 2022 IL 126729, ¶ 38 (defendants may argue the ineffectiveness of counsel for failing to demand trial at a hearing on a continuance); see also 725 ILCS 5/103-5(f) (West 2020) (delay occasioned by the defendant shall temporarily suspend for the time of the delay the period within which a person shall be tried as prescribed by subsections (a), (b), or (e) (725 ILCS 5/103-5(a), (b), (e) (West 2020))).

¶ 81         The earliest day from which the speedy-trial term could have run untolled is October 1, 2021. See 5 ILCS 70/1.11 (West 2020) (stating in relevant part that "[t]he time within which any act provided by law is to be done shall be computed by excluding the first day and including the last"). The August 19, 2021, continuance, which counted against the speedy-trial term beginning on October 1 due to this court's administrative order, amounted to delay of 45 days. The June 30, 2022, continuance amounted to 70. Both were attributable to the State and did not toll Yankaway's speedy-trial term. Yankaway does not contest that the November 15, 2021, continuance of 105 days was attributable to him.

¶ 82         The determinative continuance of 133 days from February 28, 2022, to July 11, 2022, that the court attributed to both parties—charged against Yankaway—when untolled, would have extended Yankaway's speedy trial beyond the applicable 160-day term. Defense counsel was aware of Yankaway's objection to any continuances, but defense counsel failed to adequately assert Yankaway's right to a speedy trial at the February 24, 2022, hearing by not objecting and by acquiescing to the continuance, which resulted in 133 tolled days. Consequently, we find that defense counsel was duty-bound to protect that right and his failure to do so established that his performance fell below an objective standard of reasonableness. See *Colon*, 225 Ill. 2d at 135; *Strickland*, 466 U.S. at 694.

¶ 83          D. Defense Counsel's Acquiescence to the February 28, 2022,
                    Continuance Is Attributable to Yankaway

¶ 84          Yankaway argues that the February 28, 2022, continuance is not attributable to
him. We disagree.

¶ 85          This court has determined that delays attributed to the defendant toll the speedy-
trial term. *People v. Mayfield*, 2023 IL 128092, ¶ 20; *Kliner*, 185 Ill. 2d at 123;
*People v. Turner*, 128 Ill. 2d 540, 550 (1989). Therefore, under the law, the
applicable speedy-trial period is tolled by those delays in trial that the defendant
causes, contributes to, or otherwise agrees to. *Mayfield*, 2023 IL 128092, ¶ 20. A
defense counsel's agreement to a continuance, appearing of record, may be
considered a delay attributable to defendant. *Id.* This court has explained that the
speedy-trial right is properly used as a shield against any attempt to place the
defendant's trial date outside the appropriate term but that it may be improperly
used as a sword after the fact to defeat a conviction. *Cordell*, 223 Ill. 2d at 390-91.

¶ 86          Yankaway argues that section 103-5(b) and (e) lack the requirement of
subsection (a) that "Delay shall be considered to be agreed to by the defendant
unless he or she objects to the delay by making a written demand for trial or an oral
demand for trial on the record." 725 ILCS 5/103-5(a) (West 2020). Thus,
Yankaway maintains that acquiescence to a new trial date is not an affirmative act
attributable to him pursuant to section 103-5(e) (*id.* § 103-5(e)).

¶ 87          We find that we do not need to determine whether section 103-5(e) has the same
requirements regarding an objection or demand for a speedy trial as section 103-
5(a). Here, Yankaway's defense counsel went beyond not objecting, by
affirmatively agreeing to the continuance in setting Yankaway's trial date.

¶ 88          Section 103-5(a) encompasses forfeiture principles, while defense counsel's
acquiescence is more akin to waiver. See *People v. Lesley*, 2018 IL 122100, ¶¶ 36-
37 ("[W]aiver is an intentional relinquishment or abandonment of a known right or
privilege," whereas "[f]orfeiture is defined as the failure to make the timely
assertion of the right."). Because defense counsel's conduct went beyond simply
failing to object, we need not decide the reach of section 103-5(a)'s requirements.

¶ 89    Yankaway next maintains that counsel's acquiescence is not attributable to him and, in support, relies on the appellate court's decision in *People v. Healy*, 293 Ill. App. 3d 684 (1997), for the proposition that a mere acquiescence to a date suggested by the court is not an affirmative act attributable to a defendant. However, the General Assembly rejected *Healy* by adding subsection (a)'s definition of when a defendant agrees to the delay. *Cordell*, 223 Ill. 2d at 387-88 (explaining that legislature amended the speedy-trial statute in the wake of *Healy*); see Pub. Act 90-705, § 5 (eff. Jan. 1, 1999) (amending section 103-5(a) to state that delay shall be considered agreed to by a defendant unless he or she objects to the delay by making a written or oral demand for trial); *Cordell*, 223 Ill. 2d at 390 (the speedy-trial statute gives defendants the option of accepting or rejecting a trial court's proposed trial dates).

¶ 90    This court has found that express agreements to continuances on the record are considered to be affirmative acts attributable to defendants. *Mayfield*, 2023 IL 128092, ¶ 20; *Cordell*, 223 Ill. 2d at 391; *People v. Woodrum*, 223 Ill. 2d 286, 299 (2006); *Kliner*, 185 Ill. 2d at 123-24; *Staten*, 159 Ill. 2d at 433; *Turner*, 128 Ill. 2d at 553. Consequently, defense counsel's acquiescence to the continuance was an affirmative act that delayed defendant's trial and was a delay chargeable to defendant. See 725 ILCS 103/5(e) (West 2020); see also *Mayfield*, 2023 IL 128092, ¶ 20; *Kliner*, 185 Ill. 2d at 123; *Staten*, 159 Ill. 2d at 433 ("a defendant is ordinarily bound by the affirmative acts of his counsel").

¶ 91    Yankaway also argues that he disavowed counsel's acquiescence in his March 3, 2022, *pro se* petition of ineffective assistance, stating that he did not want any more continuances and wanted to proceed *pro se*. But Yankaway is presumptively bound by his attorney's actions where he did not clearly and unequivocally discharge his attorney so that the continuance would not be attributable to him. See *People v. Mayo*, 198 Ill. 2d 530, 537-38 (2002); *People v. Pearson*, 88 Ill. 2d 210, 215 (1981) (to avoid being bound by his attorney's actions, the defendant needed to clearly and convincingly attempt to assert his right to discharge his attorney and proceed to an immediate trial). The purpose of requiring that a criminal defendant make an "unequivocal" request to waive counsel is to (1) prevent the defendant from appealing the denial of his right to self-representation or the denial of his right to counsel and (2) prevent the defendant from manipulating or abusing the system

- 21 -

by going back and forth between his request for counsel and his wish to proceed *pro se*. *Mayo*, 198 Ill. 2d at 538.

¶ 92    Yankaway appeared with counsel on April 14, 2022, the succeeding court date from the February 24, 2022, hearing. Yankaway did not state that he wanted to discharge his attorney or proceed to an immediate trial. See *Pearson*, 88 Ill. 2d at 215. In addition, on the same day, defense counsel filed an objection to the February 28, 2022, continuance. However, we find nothing in the record that would indicate that Yankaway's *pro se* motion and defense counsel's objection were brought to the attention of the court, addressed by the court, or ruled on by the court. Consequently, Yankaway was bound by his counsel's actions. See *Mayo*, 198 Ill. 2d at 537; *Kliner*, 185 Ill. 2d at 118.

¶ 93               E. The Circuit Court Did Not Abuse Its Discretion in Attributing
                the February 28 to July 11, 2022, Continuance to Yankaway

¶ 94    Yankaway next contends that the circuit court abused its discretion in charging the February 28, 2022, continuance to both parties, thus tolling his speedy-trial term. To determine whether a defendant's acts should result in tolling the speedy-trial statutory period, the circuit court is responsible for considering the particular facts and circumstances of each case. *People v. Ladd*, 185 Ill. 2d 602, 607 (1999); *People v. Fosdick*, 36 Ill. 2d 524, 528-29 (1967). On review, this court will sustain the circuit court's decision absent a clear showing that the circuit court abused its discretion. *Mayo*, 198 Ill. 2d at 535; *Kliner*, 185 Ill. 2d at 115.

¶ 95    In applying these principles here, we find that the circuit court did not abuse its discretion in attributing the period from February 28, 2022, to July 11, 2022, to Yankaway. The record reveals that the circuit court was aware of logistical issues, COVID-19 related issues, and its own crowded docket due to the October 1, 2021, lifting of the speedy-trial suspension. Specifically, the court observed that Yankaway was incarcerated in the Pinckneyville Correctional Center for several days during the relevant time period, that Hunter was incarcerated in the Robinson Correctional Center for several days during the relevant time period, and defense counsel and the State and the circuit court were in Peoria during the relevant time period.

- 22 -

¶ 96 Additionally, throughout the proceedings there were several COVID-19 related lockdowns at the correctional institutions. During the February 24, 2022, hearing the circuit court stated that it was "not practical" to think that the trial would begin as scheduled. The court further hoped to pick a date that was both "logical" for "conclud[ing the case] by some disposition, by trial, or plea" and would also "allow lawyers to have an opportunity to talk with whoever they need to talk to more than just a day ahead of time." The court noted that it had too many cases set for a hearing in May and proposed setting a June 2022 trial and a separate scheduling conference for April 2022 so that the State and defense counsel could meet with Hunter and Yankaway, respectively. See *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 61-63 (1995) (it is well established that circuit courts possess the inherent authority to control their docket); *People v. Garcia*, 312 Ill. App. 3d 422, 423 (2000) (same). The court discussed several trial dates, saying it was "not married to any of those dates." In response, defense counsel stated that Yankaway wanted to stay in the Peoria County Jail "until the trial is over." The court denied that request. The State proposed a July 11, 2022, trial date, to which defense counsel responded, "that's fine." The court found that the parties agreed to the continuance from February 28, 2022, to July 11, 2022.

¶ 97 Yankaway relies on *People v. Beyah*, 67 Ill. 2d 423, 426-27 (1977), for the proposition that a continuance based on the court's determination that it was by agreement where the court told the parties to pick a date cannot be attributed to the defendant. We find Yankaway's reliance misplaced. In *Beyah*, the court and attorneys were occupied in the trial of another defendant. *Id.* at 428. The defendant appeared on a bond reduction motion, and after denying the motion, the court ordered the defense to pick a trial date. *Id.* This court reasoned that it would be a mockery of justice to conclude that after counsel was ordered to pick a date the delay was attributable to the defendant. *Id.* at 428-29.

¶ 98 Here, in contrast, the court did not force Yankaway into agreeing to a continuance but merely suggested a June 2022 trial and an April 2022 scheduling conference. See *Turner*, 128 Ill. 2d at 554-55 (where the court recommended a date and the defendant agreed that it was acceptable, the defendant was not forced to accept a date the court chose; thus, the defendant failed to meet his burden of showing the court abused its discretion). In addition, amidst the discussions between the court and the parties, defense counsel had numerous opportunities to

disagree and demand trial. Therefore, the court reasonably interpreted defense counsel's response to signal agreement regarding the delay.

¶ 99      This court has found that, when a date is set by agreement of the parties, it is an affirmative act of delay attributable to defendant, which tolls the speedy-trial term. See *Woodrum*, 223 Ill. 2d at 299 (finding that an agreed continuance generally constitutes an act of delay attributable to the defendant); *Kliner*, 185 Ill. 2d at 116 (same); *Staten*, 159 Ill. 2d at 432 (circuit court's decision to reschedule defendant's trial with the express acknowledgement and acquiescence of the defense tolled the speedy-trial period). Defense counsel's acquiescence, as well as the court's awareness of the circumstances and the particular facts of this case, supports the finding of proper discretion from the court. Consequently, the circuit court's attribution of the February 28, 2022, continuance to Yankaway was not arbitrary, fanciful, or so unreasonable that no reasonable person could take the circuit court's view. See *Mayo*, 198 Ill. 2d at 535.

¶ 100                F. Yankaway's Ineffective Assistance of Counsel Claim
                     Fails Because He Cannot Show *Strickland* Prejudice

¶ 101      Yankaway argues that he was prejudiced by defense counsel's deficient performance in not objecting to the February 28, 2022, continuance. Yankaway contends that, had counsel acted effectively, it was reasonably probable that on September 19, 2022, his motion to dismiss would have succeeded and his charges would have been dismissed.

¶ 102      Defense counsel's actions in this case with respect to Yankaway's speedy-trial rights fell below an objective standard of reasonable performance. However, to conclude defense counsel's conduct rose to the level of incompetency requiring reversal of Yankaway's convictions, Yankaway must also establish that it is reasonably probable the outcome of the hearing on September 19, 2022, would have been different had defense counsel acted competently. *Colon*, 225 Ill. 2d at 135 (citing *Strickland*, 466 U.S. at 694). " 'Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced.' " *Johnson*, 2021 IL 126291, ¶ 55 (quoting *People v. Patterson*, 2014 IL 115102, ¶ 81); see *People v. Palmer*, 162 Ill. 2d 465, 481 (1994) (finding that proof of prejudice cannot be based on conjecture or speculation).

¶ 103    Here, both parties base their arguments on speculation. But it is the defendant's burden to show that the results would have been different on his motion to dismiss if defense counsel had objected to the February 28, 2022, continuance. Yankaway's prejudice theory rests on speculation that his charges would have been dismissed at the September 2022 hearing, as he assumes that pretrial proceedings would have transpired precisely as they occurred.

¶ 104    However, the record belies such an assumption. The record reflects that the circuit court was cognizant of a speedy-trial concern, noting it on several occasions. At the November 15, 2021, hearing, the court stated "we're picking back up with the speedy trial counts." On June 30, 2022, the court expressed concern that the trial might be untimely if continued until September because of the 120-day term but explained that it did not have time to put the trial in July or August. At the status hearing on August 10, 2022, after confirming that defendant was incarcerated with a release date of September 2023, the court stated "I don't think there is a speedy trial issue because you can't get out anyway."

¶ 105    Additionally, at the September 19, 2022, hearing on defendant's motion to dismiss, the circuit court stated that the State would have 160 days from the day that the speedy-trial suspension was lifted, which would have been October 1, 2021. And after asking how many days since then, the State responding 128, the court concluded that it would be 130. The court also noted that, "because he had a second case. The State did elect on it. It had concluded. So the State had 160 days from the date that *** the 120 picked back up. So I find that it is within the timeframe of being prosecuted." The court then denied the motion.

¶ 106    Yankaway relies on *People v. Mooney*, 2019 IL App (3d) 150607, ¶¶ 28-29, for the proposition that the prejudice prong is satisfied because of the actuality that the defendant's trial was held outside the speedy-trial term. Because of factual distinctions, we find Yankaway's reliance on *Mooney* misplaced. In *Mooney*, a motion to dismiss was never filed, and the appellate court found that two continuances that counted against defendant were not factually attributable to defendant. *Id.* ¶ 28. In addition, the *Mooney* court found that finding prejudice required a certain amount of speculation. *Id.* ¶ 27. Thus, the *Mooney* court did not adhere to the legal principles applicable to a prejudice analysis under *Strickland*. See *Colon*, 225 Ill. 2d at 135; *People v. Teen*, 2023 IL App (5th) 190456, ¶ 49. To

the extent that *Mooney* holds that speculation proves prejudice in an ineffective assistance claim, it is hereby overruled.

¶ 107    Yankaway's speculative argument disregards the possible effects an objection to the February 28, 2022, continuance would have had on the subsequent pretrial proceedings. Yankaway's argument rests on the assumption that the State would not have changed its pretrial strategy and the circuit court would not have changed its approach. Yankaway cannot establish prejudice based on possibilities and speculation. See *Johnson*, 2021 IL 126291, ¶¶ 54-55; see also *Jackson*, 235 Ill. App. 3d at 740 (the record does not support the conclusion that the State would not have changed strategy and brought the defendant to trial within the applicable speedy-trial term); *Willis*, 235 Ill. App. 3d at 1069 (same); *United States v. Miller*, 953 F.3d 804, 812-13 (D.C. Cir. 2020) (defendant cannot rest on hypotheticals to establish *Strickland* prejudice).

¶ 108    Therefore, Yankaway has not demonstrated a reasonable probability that, if defense counsel acted effectively the result of the hearing on September 19, 2022, would have been different, as *Strickland* requires. See *Colon*, 225 Ill. 2d at 135 (citing *Strickland*, 466 U.S. at 694). Accordingly, Yankaway has not met his burden of affirmatively proving prejudice. See *Johnson*, 2021 IL 126291, ¶ 55. Consequently, Yankaway's claim of ineffective assistance of defense counsel fails.

¶ 109            G. The Circuit Court's Misapprehension of the Sentencing Range
            Did Not Affect Its Sentencing Decision and Was Not Plain Error

¶ 110    In the alternative, Yankaway argues that the circuit court misapprehended the applicable sentence for attempted first degree murder and that the alleged misapprehension erroneously influenced the court's sentencing decision. Yankaway seeks remand for resentencing. Yankaway acknowledges that he did not properly preserve this argument but asks us to review it for second prong plain error.

¶ 111    This court reviews a forfeited sentencing claim for plain error. See *People v. Sebby*, 2017 IL 119445, ¶ 48. This court reviews *de novo* the question of law whether a court committed plain error. *People v. Marcum*, 2024 IL 128687, ¶ 28; *People v. Williams*, 2022 IL 126918, ¶ 48.

¶ 112 "The plain error rule is a well-established exception to forfeiture principles, allowing reviewing courts discretion to excuse a defendant's procedural default." *People v. Moon*, 2022 IL 125959, ¶ 19 (citing *Sebby*, 2017 IL 119445, ¶ 48). Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), commonly known as the plain error rule, provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." The plain error rule itself is a narrow and limited exception to the forfeiture doctrine. *People v. Jackson*, 2022 IL 127256, ¶ 27. There are two avenues to plain error relief: (1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Moon*, 2022 IL 125959, ¶ 20; *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Under either avenue, a defendant must first establish that a clear or obvious error occurred. *Moon*, 2022 IL 125959, ¶ 22. Therefore, we first determine whether Yankaway has established that the circuit court erred in its sentencing decision.

¶ 113 The circuit court sentenced Yankaway to 44 years for attempted murder but misstated the sentencing range when it stated that Yankaway was subject to a 20-year enhancement and that his sentencing range was therefore 26 to 50 years. 730 ILCS 5/5-4.5-25 (West 2020) (Class X felonies generally subject to 6- to 30-year range). The State, in its special interrogatory, which the jury found the State proved, only sought the 15-year enhancement for being armed with a firearm. See 720 ILCS 5/8-4(c)(1)(B) (West 2020) (attempted murder while armed with a firearm is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court). Thus, although the State argued at the sentencing hearing that the 20-year enhancement applied, the applicable sentencing range was 21 to 45 years.

¶ 114 The record reveals that the court's misstatement regarding the sentencing range did not influence its sentencing decision. The court stated that Yankaway was "overwhelmingly guilty" and that his crimes were "stunning" because he and Hunter were cousins and friends. And, after reviewing the aggravating factors and limited mitigation, the court found that Yankaway is "the person that the

community needed to be afraid of, but, worse than that, your own family, your own family, and your own friend needed to be afraid of you" and that, "as difficult as this is for me to say, you are the reason prisons are built." The court further stated that "it's a shame you picked a life of prison and not a life of Peoria." The court's statements support our finding that its sentence was based on the seriousness of the offense and Yankaway's commitment to a life of crime.

¶ 115 Accordingly, Yankaway failed to demonstrate that he would have received a lower sentence but for the court's misunderstanding; therefore, he cannot satisfy his burden of showing a clear and obvious error. See *Eddington*, 77 Ill. 2d at 48 (concluding that the court's misunderstanding of the sentencing range was harmless where it did not influence the defendant's sentence). Because Yankaway has failed to establish error necessary for plain error relief, we need not determine whether second prong plain error was applicable to Yankaway's claim.

¶ 116                                   III. CONCLUSION

¶ 117 In sum, we find that Yankaway's defense counsel performed deficiently when he did not object, but rather acquiesced, to the February 28, 2022, continuance. We further find that defense counsel's acquiescence is attributable to Yankaway. We also find that the circuit court did not abuse its discretion in attributing the continuance to Yankaway and denying Yankaway's motion to dismiss. We hold that Yankaway cannot show *Strickland* prejudice and therefore his ineffective assistance claim fails. Finally, we find that Yankaway cannot demonstrate that he would have received a lower sentence but for the court's misunderstanding of the sentencing range; therefore, he failed to establish error necessary for plain error relief.

¶ 118 For the foregoing reasons, we affirm that part of the judgment of the appellate court that found Yankaway's ineffective assistance of counsel claim failed and affirm Yankaway's sentence. We vacate that part of the judgment of the appellate court that remanded for sentencing on Yankaway's UPWF conviction.

¶ 119 Appellate court judgment affirmed in part and vacated in part.

¶ 120    Circuit court judgment affirmed.

¶ 121    JUSTICE OVERSTREET, specially concurring:

¶ 122    I agree with much of what my colleagues have concluded in this case, including that we should affirm the circuit court's judgment and vacate that part of the appellate court's judgment that remanded for sentencing on defendant's unlawful possession of a weapon by a felon conviction. Specifically, I agree that defendant's attorney did not render unreasonable assistance in failing to file a speedy-trial demand under the intrastate detainers statute because defendant was not subject to that statute for the reasons explained in the majority's analysis. I agree with the majority that section 103-5(e) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(e) (West 2020)) determined defendant's speedy-trial rights and counsel was not required to file a demand to start defendant's statutory speedy-trial term, which started automatically on October 1, 2021, when COVID-19 speedy-trial restrictions were lifted.

¶ 123    I write separately to address the majority's handling of defendant's ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), in which defendant argues that his attorney was constitutionally ineffective at the February 24, 2022, pretrial hearing when counsel expressly agreed to continue the February 28, 2022, trial date to July 11, 2022. *Supra* ¶¶ 78-82. The majority concludes that defense counsel's performance "fell below an objective standard of reasonableness" in agreeing to this continuance. *Supra* ¶ 82. I believe this court should limit its analysis of this issue to consideration of only the prejudice prong of the *Strickland* standard, as the majority correctly concludes that defendant cannot satisfy this prong of the standard.

¶ 124    Under *Strickland*, a defendant establishes ineffectiveness of his counsel by showing two things: (1) that his attorney's actions constituted errors so serious as to fall below an objective standard of reasonableness and (2) that his attorney's deficient performance prejudiced the defendant. *People v. Agee*, 2023 IL 128413, ¶ 50.

¶ 125    When the United States Supreme Court established this standard for determining whether a defendant has been denied his constitutional right to

assistance of counsel, the Court discussed practical considerations that are important for application of this standard, emphasizing that a court need not determine whether counsel's performance was deficient before examining the claimed prejudice stemming from the alleged deficient performance. *Strickland*, 466 U.S. at 697. More specifically, the Court admonished lower courts, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *** that course *should* be followed." (Emphasis added.) *Id.* The Court explained that, in cases where a defendant cannot show prejudice, limiting the *Strickland* analysis to only the prejudice prong of the standard helps ensure that ineffectiveness claims do not "become so burdensome to defense counsel that the entire criminal justice system suffers as a result." *Id.*

¶ 126     This court formally adopted the *Strickland* standard in *People v. Albanese*, 104 Ill. 2d 504, 527 (1984). In doing so, the *Albanese* court, like countless other courts, emphasized the *Strickland* Court's directive to dispose of an ineffective assistance of counsel claim on lack of prejudice grounds when possible. *Id.* (noting the Court offered guidelines to assist lower courts, including the preference of resolving ineffectiveness claims on the ground of lack of sufficient prejudice).

¶ 127     In *People v. Barnard*, 104 Ill. 2d 218, 238 (1984), this court recognized this admonishment by the *Strickland* Court as being "particularly noteworthy" considering the number of ineffectiveness claims being made in criminal appeals. See *People v. Taylor*, 166 Ill. 2d 414, 436 (1995) ("[I]f it is easier to dispose of a claim of ineffectiveness of counsel on the ground of lack of sufficient prejudice to the defendant, *that course should be followed*." (Emphasis added.)); *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998) ("[L]ack of prejudice renders *irrelevant* the issue of counsel's performance." (Emphasis added.)).

¶ 128     The *Strickland* Court's preference for addressing only the prejudice prong of the standard when possible is widely recognized and applied in jurisdictions throughout the country. *Kines v. Godinez*, 7 F.3d 674, 678 n.4 (7th Cir. 1993) ("*Strickland* expresses a preference for analyzing prejudice before deficient performance."); *United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005) ("We have previously advised courts to consider the prejudice prong before examining the performance of counsel because this course of action is less burdensome to defense counsel."); *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) ("it is

preferable to avoid passing judgment on counsel's performance when possible"); *In re B.B.*, 381 N.C. 343, 2022-NCSC-67, ¶ 40 ("Resolving claims of ineffective assistance of counsel on the respondent's failure to show prejudice is consistent with the recommendation by the Supreme Court of the United States and [the Supreme Court of North Carolina]'s precedent in criminal proceedings."); *Little v. State*, 2024 WY 78, ¶ 17, 552 P.3d 385, 390 (disposing of ineffectiveness claim on the ground of lack of prejudice is often the preferred course); *Dominguez v. Pruett*, 756 S.E.2d 911, 914 (Va. 2014) (it is often preferrable to address the prejudice requirement in full at the outset); *State v. Wisowaty*, 627 A.2d 572, 574-75 (N.H. 1993) (Although courts have flexibility to adopt the analytic approach that promotes clarity and ease of review, "the preferable course in a challenge based on ineffective assistance of counsel is to require the defendant to prove as a threshold matter that the alleged error by counsel prejudiced his case."); *Smith v. State*, 991 A.2d 1169, 1177 n.40 (Del. 2010) ("In *Strickland*, the court expressed *a strong preference* that lower courts should, if possible, decide claims of ineffective assistance of counsel by first deciding if there was any 'prejudice' which resulted from the alleged deficient performance." (Emphasis added.)); *Cranor v. State*, 699 N.E.2d 284, 286 (Ind. Ct. App. 1998) ("There is a preference for addressing the prejudice element first since it is not the object of an ineffectiveness claim to grade counsel's performance."); *United States v. Dago*, 813 F. Supp. 736, 743 (D. Colo. 1992) ("If a claim of ineffectiveness can be disposed of strictly on the basis of lack of prejudice, that is a preferred course."); *Bowling v. Parker*, 138 F. Supp. 2d 821, 853 (E.D. Ky. 2001) ("in *Strickland*, the Court *voiced an explicit preference*" for disposing of ineffectiveness claims on insufficient prejudice grounds (emphasis added)); *Huenefeld v. Maloney*, 62 F. Supp. 2d 211, 233 (D. Mass. 1999) (same).

¶ 129    I believe this court and our lower courts should continue to adhere to the *Strickland* Court's explicit admonishment in assessing claims of ineffective assistance of counsel and that this limitation should apply in the present case. This practice serves several important purposes in the function of our judiciary and our criminal justice system, including promoting judicial economy, avoiding needless constitutional rulings on attorney performance, and adhering to the principle that a court should not adjudicate more than is required to resolve the matters before it. See *People v. White*, 2011 IL 109689, ¶¶ 153-54 (courts of review should exercise judicial restraint, particularly when constitutional issues are involved, and not make unnecessary law).

¶ 130        Here, the majority has elected to needlessly pass judgment on defense counsel's decision to agree to the July 11, 2002, trial date even though doing so is *irrelevant* to resolving defendant's *Strickland* challenge. I believe it is imprudent for the majority to do so, particularly when the record on direct appeal indicates that, when the parties appeared at the February 24, 2022, pretrial hearing, the scheduled February 28, 2022, trial was impractical.

¶ 131        The record indicates that there had been difficulty throughout the pretrial proceedings with defense counsel meeting with defendant due to defendant's incarceration in a Department of Corrections (DOC) facility in Pinckneyville on another conviction and due to COVID-19 lockdowns. The victim was also in DOC and had also been in COVID-19 lockdowns. Leading up to the February 24, 2022, pretrial hearing, defense counsel's December 2021 trial schedule was too crowded for counsel "to even begin getting ready for trial."

¶ 132        Defendant was supposed to be transferred from DOC to the Peoria County Jail on February 17, 2022, to allow defendant and defense counsel "a week and a half or so" to meet prior to trial. This apparently did not occur, as defendant was in a DOC facility in Pinckneyville when the attorneys appeared in court in Peoria for the February 24, 2022, pretrial hearing.

¶ 133        At the outset of the pretrial hearing, the circuit court reiterated the difficulties with defendant serving a sentence in a DOC facility in Pinckneyville while the attorneys and the circuit court were in Peoria. The circuit court stated that it did not "want to writ people back so that a lawyer can talk with them whether it's the State or Defense" but was willing to accommodate the lawyers if "we're getting toward a meaningful goal." The circuit court told the attorneys to pick a day in April when they could "writ your folks [(defendant and victim)] back[;] that way you can both assess where your case is and get done what needs to be done between April and June."

¶ 134        The parties met for this pretrial conference on Thursday (February 24), only two court days before the trial scheduled the next Monday (February 28). In discussing trial dates beyond the scheduled February 28, 2022, trial date, the circuit court observed that additional time would "allow lawyers to have an opportunity to talk with whoever they need to talk to more than just a day ahead of time." Defense counsel did not disagree with the circuit court's concern about trial preparation and

did not state that the defense was ready for trial or would be ready for trial by Monday, February 28, 2022.

¶ 135        Accordingly, nothing in the record establishes whether defendant's attorney could proceed with a constitutionally effective defense of defendant on February 28, 2022, had defense counsel objected to the continuance and the trial proceeded on February 28, 2022, as scheduled. See, *e.g.*, *People v. Clamuextle*, 255 Ill. App. 3d 504, 510 (1994) ("Defense counsel's *failure to seek the continuance* in order to locate a material witness did not constitute trial strategy but was instead an objectively unreasonable error." (Emphasis added.)); *In re H.C.*, 2023 IL App (1st) 220881, ¶¶ 132-34 (counsel rendered unreasonable assistance in not requesting a continuance). Therefore, I do not believe that we can or should pass judgment on counsel's performance at the February 24, 2022, pretrial hearing based on this record.

¶ 136        If the issue of counsel's performance was relevant to resolving defendant's claim under the *Strickland* standard, the issue would be better suited for consideration on collateral review. "The defendant must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 83. "Counsel's strategic choices are virtually unchallengeable on appeal." *Id.* Strategic choices can include determining when there is a need to continue a trial setting as competent counsel must have latitude to manage trial preparation and scheduling. *New York v. Hill*, 528 U.S. 110, 115 (2000) (" '[T]he lawyer has—and must have—full authority to manage the conduct of the trial,' " and "only counsel is in a position to assess whether the defense would even be prepared to proceed any earlier." (quoting *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)).

¶ 137        To overcome the strong presumption of sound trial strategy, the record must contain "sufficient information" for defendant to meet this high burden. See, *e.g.*, *People v. Gayden*, 2020 IL 123505, ¶ 29 (the record was insufficient to determine whether trial counsel's decision concerning the filing of a motion to suppress was strategic). Collateral review, therefore, is necessary when defendant's ineffective-assistance claim is based on matters that are outside the appellate record. *People v. Veach*, 2017 IL 120649, ¶ 46.

¶ 138    Here, if it were necessary to grade counsel's performance, a postconviction proceeding would provide an opportunity to develop a factual record concerning whether a trial on February 28, 2022, was possible in light of counsel's obligation to provide defendant a constitutionally sufficient defense and, if not possible, whether a continuance would be consistent with constitutionally reasonable trial preparation or, alternatively, would have been the result of a constitutionally deficient performance. Counsel's actions must be evaluated based on counsel's perspective at the time of the continuance. *Strickland*, 466 US. at 689 (A fair assessment of attorney performance requires that every effort be made to "evaluate the conduct from counsel's perspective at the time."). Counsel's perspective on his trial readiness on February 24, 2022, cannot be determined from the record before us when he did not declare that the defense was ready for trial. Although defense counsel, almost two months later, filed an objection to the circuit court's pretrial order, alleging that he did not approve of the continuance, the record of the February 24, 2022, hearing contradicts the allegations in this pleading and, at most, creates even more uncertainty in the record before us with respect to the reasonableness of counsel's performance at the February 24, 2022, pretrial hearing.

¶ 139    For all of these reasons, this court should adhere to the *Strickland* Court's explicit admonishment and resolve defendant's ineffective assistance of counsel claim only on the prejudice prong of the *Strickland* standard and not needlessly evaluate counsel's performance based on a record unsuitable for that purpose. Thus, I specially concur.