NOTICE
Decision filed 10/23/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 210398-U

NO. 5-21-0398

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 07-CF-445 |
| | ) | |
| LEONARD C. COTTON JR., | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices Cates and Sholar concurred in the judgment.

**ORDER**

¶ 1  *Held*:  We affirm the circuit court's judgment denying defendant's amended petition for postconviction relief after a third-stage evidentiary hearing where defense counsel was not ineffective.

¶ 2  The defendant, Leonard C. Cotton Jr., entered a negotiated plea of guilty in the circuit court of St. Clair County to one count of first degree murder (720 ILCS 5/9-1(a)(3) (West 2006)). He thereafter was sentenced to 20 years of imprisonment in the Illinois Department of Corrections. The defendant previously appealed the second-stage dismissal of his postconviction petition. In that appeal, this court reversed and remanded for further second-stage proceedings with new appointed counsel due to postconviction counsel's noncompliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). *People v. Cotton*, 2018 IL App (5th) 150167-U, ¶ 75. He now appeals the third-stage dismissal of his second amended petition for postconviction relief

1

maintaining that his plea counsel was ineffective. He does not appeal the circuit court's dismissal of his other claims raised in his amended petition for postconviction relief. For the following reasons, we affirm the order of the circuit court of St. Clair County.

¶ 3                                    I. BACKGROUND

¶ 4      As stated above, this court has previously considered an appeal by the defendant in this case and set forth a detailed background in *People v. Cotton*, 2018 IL App (5th) 150167-U. We will only state those relevant and additional facts that occurred after remand that are necessary for the disposition of this matter.

¶ 5      On remand, the circuit court appointed new postconviction counsel for the defendant and continued with additional second-stage proceedings. On April 7, 2021, defense counsel filed a "Second Amended Motion to Vacate Guilty Plea"[1] and attached a 651(c) certificate. In the petition, the defendant argued that: (1) the fitness hearing in which he was ultimately found fit to stand trial failed to meet minimal standards of due process; (2) his guilty plea was not knowing and voluntary where his mental illness/capacity prevented him from understanding the nature of the proceedings; and (3) his guilty plea must be vacated because it was entered as a result of ineffective assistance of counsel for failing to file a motion to suppress his statement. Attached to the defendant's petition were (1) the transcripts from the May 27, 2009, fitness hearing, (2) the guilty plea, (3) the police interview of the codefendant, Custer, (4) the transcripts from Custer's suppression hearing, and (5) the order granting Custer's suppression motion. In addition, the defendant attached two of his own affidavits and one from his father, Leonard Cotton Sr. In the defendant's affidavit dated April 20, 2015, he attested that he told his trial attorney that Detective Rick Perry threatened him with jail time if he did not tell Perry what he wanted to hear, and that in an interview that was not

_____

[1]We note that this motion, though titled incorrectly, was effectively an amended postconviction petition and operated as such in the circuit court.

2

recorded, Perry promised him that if he told Perry what he wanted to hear he would be able to go home. In his affidavit dated June 29, 2012, the defendant attested that his trial attorney talked to him about suppressing his statement, but that when he responded that he did not understand, she told him not to worry about it, because even if his statement was suppressed, the State would use his father's statement against him at trial and he would be found guilty and get 45 years in prison. The defendant further attested that because of his mental retardation he was unable to assist in his defense. In his father's affidavit dated November 10, 2011, Cotton Sr. attested that he told Detective Perry that his son was not involved in the shooting several times, and that he only changed his story after Perry repeatedly threatened him with prison time. The defendant attached the video of Perry's interview with Cotton Sr. Also attached to the petition was a News 4 article, dated January 29, 2009, discussing the illegal statement taken from Custer by Perry and quoting State's Attorney Haida as saying that Perry would no longer be used as an "essential witness." The defendant attached a report authored by East St. Louis police officer G. Morris who stated that on April 23, 2007, Perry placed the defendant in a holding cell and then Perry returned to the holding cell when he heard the defendant knock on the holding cell window and began to converse with him. Morris heard Perry say, "Oh, you want to talk to me now." Finally, a Department of Human Services 90-day treatment report dated November 12, 2008, was attached to the petition.

¶ 6    On June 23, 2021, the State filed a motion to dismiss the amended petition. The State argued that the fitness hearing met the standards of due process where the defendant stated he understood his right to a hearing, the defendant chose to waive his right to the hearing on the record, and the parties stipulated that the experts would testify consistently with their reports. As an alternative, the State argued that the defendant could not establish the requisite prejudice needed to sustain a due process claim. The State argued that defendant's guilty plea was knowingly and

3

voluntarily made where (1) the record is void of any indication that the defendant was exhibiting irrational or problematic behavior and there was no indication of concern regarding the defendant's competency at the time of the plea, (2) the defendant had been found fit approximately two months before the plea, and (3) the defendant did not provide any records, affidavits, or other evidence to support how his mental illness/capacity prevented him from understanding the nature of the proceedings against him; nor did he explain specifically what about the terms of the plea, the specific allegations, the sentencing scheme for first degree murder, or the circuit court's admonishments he did not understand. Finally, the State argued that defense counsel was not ineffective for failing to file a motion to suppress where (1) success on a motion to suppress was not guaranteed and the defendant would risk the revocation of the offer for the minimum number of years, (2) even if a motion to suppress were granted, there remained two statements implicating the defendant's involvement in the shooting, and (3) even if counsel was ineffective, the defendant cannot establish the prejudice prong of *Strickland*.

¶ 7      On August 10, 2021, the circuit court issued a written order granting the State's motion to dismiss in regard to the defendant's first two claims but denied the motion on the defendant's third claim that his plea counsel was ineffective for failing to file a motion to suppress. The circuit court found that the defendant had made a sufficient showing regarding his claim of ineffective assistance of counsel to proceed to an evidentiary hearing.

¶ 8      On November 18, 2021, the circuit court held a third-stage evidentiary hearing regarding the defendant's remaining claim of ineffective assistance of counsel. Defendant's plea counsel testified that she and the defendant discussed filing a motion to suppress and "all of his options," and he did not want to file the motion. She further testified that at the time, a standard condition on most offers was that if a defendant filed motions and proceeded on them, the offer would be

4

revoked. She testified that the defendant "wanted to plead guilty and take the deal that was offered to him for 20 years in the Illinois Department of Corrections" and on cross-examination admitted that if he did not plead, he was looking at a sentence up to natural life in prison. Plea counsel testified that even up to the day the defendant pled guilty, she discussed filing a motion to suppress with him and offered to file it and other motions that were discussed but "he did not want to proceed in that fashion."

¶ 9     Defendant's plea counsel further testified that the defendant had told her that Detective Perry had spoken to the defendant off camera and told the defendant that "he believed that [the codefendant] was the shooter and that if he gave him a statement he would let him go." She testified that she was aware of the codefendant's case and that a motion to suppress based on conversations held off camera between Detective Perry and the codefendant was granted due to issues surrounding Perry's credibility. She further testified that she did not obtain or review the transcript from the codefendant's suppression hearing, but that if defendant had wanted to proceed to trial, she would have done so. She also testified that the facts of the codefendant's claim were different from defendant's, including that (1) defendant had additional officers, not just Detective Perry, present during questioning where his codefendant had only had Detective Perry, (2) defendant had made statements to his father and another individual incriminating himself where his codefendant had not, and (3) they were in front of different judges, such that it was hard to know if defendant would be as successful in suppressing the statements in his case as his codefendant had been.

¶ 10    Additionally, plea counsel testified that she watched the statement given by Cotton Sr. and while she could not recall what was said, she did indicate that she would have contacted him about his statement had the case proceeded to trial. On cross-examination she agreed that she did not

5

know about Cotton Sr.'s attempted recantation, but acknowledged that there were considerable grounds for impeachment of the recantation.

¶ 11     Cotton Sr., the defendant's father, was also called to testify at the hearing by the defendant's new postconviction counsel. He testified that he and his fiancé at the time took the defendant to the police station for questioning at Detective Perry's request and, after a while, Perry asked to speak to him as well. He testified that he initially told Perry that the defendant had not told him about committing any crimes. He further testified that Detective Perry began threatening to arrest him—going so far as to place handcuffs on him—for his outstanding warrants unless he stated that defendant had committed the crime. He also testified that Perry turned off the video recording of the interview at serval points, and after an hour and a half to two hours he finally told Perry what Perry wanted to hear—that defendant had told him that defendant robbed "a dice game." He further testified that he had attempted to contact the public defender assigned to his son's case but did not specifically mention in his testimony why he was attempting to contact the public defender or what he wanted to tell them. On cross-examination, he admitted he never filed any complaints about Perry's conduct during the interview.

¶ 12     Finally, the defendant was called to testify on his own behalf. He stated that when he was first taken to the police station and asked about the murder, he told Detective Perry that he was with his codefendant and that when they heard gunshots they took off running, but "had nothing to do with it." He admitted that he later changed his statement to Perry after learning his codefendant made a statement admitting that he (codefendant) was the shooter, with the defendant then blaming it entirely on his codefendant and denying any involvement himself. He further testified that on a later visit to the police station he continued to deny being involved in the shooting, insisting that his codefendant was the only one involved. He also stated that when he

6

was shown his father's statement implicating him in the crime, he quit talking and was moved to the holdover cell by Detective Perry. After being locked in a holdover cell, he testified that he told Perry "what do you want to know" and that he again changed his testimony again to match what Perry wanted, which was a statement implicating his codefendant. Defendant also changed his statement to admit that he (defendant) was the shooter, at which point he was released by Perry. He testified that he did not tell his plea counsel all of this, only that his father's statement was a lie, that he (defendant) gave four or five conflicting statements, and that the statements he gave were not voluntary.

¶ 13 He also testified that his plea counsel told him he had good odds for a motion to suppress, but that there was other evidence, including his father's statement, that could still result in him losing at trial if he proceeded to one. He testified that he was unaware his codefendant's statement was suppressed and was also unaware as to why it was suppressed. Defendant also testified that there was no discussion of trial strategy with his plea counsel outside of the motion to suppress, and that his understanding was he was either getting 20 years or 45 years, as he believed he had no option to dispute the State's case or the possibility that he could win a favorable jury verdict. Finally, defendant testified that had he known everything at the time he would have chosen the jury trial.

¶ 14 On cross-examination, defendant admitted that he did not originally mention the off-camera parts of the interview when he first applied for postconviction relief, but that he did mention them to his attorney before he pled. He also testified that he never spoke to Cotton Sr. about Cotton Sr.'s statement, but that defendant knew it was a lie because, "I never told him nothing about nothing." The court then heard closing arguments and took the case under advisement before issuing a written ruling.

¶ 15 On November 29, 2021, the circuit court issued a written order denying the defendant's petition for postconviction relief. Among the circuit court's findings of fact were: (1) that defendant was subject to a maximum sentence of natural life in prison; (2) that the State offered to recommend a sentence of 20 years if defendant pled guilty to first degree murder; (3) that defendant's plea counsel stated it was standard practice for the State to withdraw offers if substantive pretrial motions were filed by a defendant; (4) that defendant's plea counsel believed the differences between the defendant's case and his codefendant's case meant that a similar outcome was not guaranteed for a motion to suppress; (5) that based on points one through four, defendant's plea counsel believed it was not in the best interest of the defendant to risk revocation of the offer by filing motions; and (6) that defendant's plea counsel discussed all of his options with defendant before defendant pled, and defendant chose to file no motions.

¶ 16 Thus, the circuit court found the defendant's claim that he would not have pled but for his plea counsel not fully advising him as to all of his options "not credible" as the court did not "believe that he would have risked the possibility of receiving a life sentence when he was offered the statutory minimum sentence for the offense of first degree murder." After the circuit court made its ruling, the defendant timely filed this appeal.

¶ 17                                  II. ANALYSIS

¶ 18 On appeal, the defendant raises an argument of ineffective assistance of counsel under the Post-Conviction Hearing Act (Act), which provides that individuals convicted of criminal offenses may challenge their convictions on grounds of constitutional violations. 725 ILCS 5/122-1 *et seq.* (West 2024). The Act sets forth three stages of review. First, the circuit court may dismiss postconviction petitions that are "frivolous or *** patently without merit." *Id.* § 122-2.1(a)(2). A

8

petition may be summarily dismissed as frivolous or patently without merit only if it has no arguable basis either in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009).

¶ 19    If the circuit court does not dismiss the petition, it advances to the second stage. *People v. Domagala*, 2013 IL 113688, ¶ 33. At the second stage, counsel may be appointed to an indigent defendant, and the State may file a motion to dismiss or an answer to the petition. 725 ILCS 5/122-4, 122-5 (West 2024). At this stage, the circuit court must determine whether the petition and any accompanying documentation make a "substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 20    Where, as here, if the petitioner makes the requisite second-stage substantial showing that his constitutional rights were violated, he is entitled to a third-stage evidentiary hearing. *Id.* At such a hearing, the circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts. See *People v. English*, 2013 IL 112890, ¶ 23.

¶ 21    The burden of proof at the third-stage evidentiary hearing stage "is upon the petitioner to show a denial of [a] constitutional right by a preponderance of the evidence." (Internal quotation marks omitted.) *People v. Coleman*, 2013 IL 113307, ¶ 92 (quoting *People v. Stovall*, 47 Ill. 2d 42, 47 (1970)). During the third-stage evidentiary hearing, where fact-finding and credibility determinations are involved, we will not reverse the circuit court's decision unless it is manifestly erroneous. *People v. Carter*, 2017 IL App (1st) 151297, ¶ 132. If no fact-finding or credibility determinations were necessary at the third stage, and the issues presented were all pure questions of law, we apply a *de novo* standard of review. *Id.* Typically, review of a claim of ineffective assistance of counsel involves a mixed question of law and fact. *People v. Phillips*, 2017 IL App (4th) 160557, ¶ 55. When addressing such a claim, we defer to the court's findings of fact and will

disturb them only if they are against the manifest weight of the evidence, but we review *de novo* the court's ultimate determination of whether counsel rendered ineffective assistance. *Id.*

¶ 22 Here, defendant raises two arguments in support of his contention his constitutional right to effective counsel was violated. First, defendant argues that a deciding factor in whether to accept or reject the State's plea offer was the likelihood that a motion to suppress the statement he made to police would have been granted, and the true likelihood of success was unknown to him due to his counsel's ineffectiveness. In furtherance of this contention, he argues that during the time he was questioned by Detective Perry he lacked mental capacity and was unable to waive his *Miranda* rights as he was found unfit to stand trial shortly thereafter, and that in order to be valid, a waiver of *Miranda* must be "knowing and intelligent," reflecting "an intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.) *People v. Braggs*, 209 Ill. 2d 492, 514 (2003). He also argues that his plea counsel failed to fully investigate the circumstances that led to the successful suppression of his codefendant's confession to Detective Perry, which was a result of some misconduct committed by Detective Perry. The defendant argues that, as a result, he was prevented from making a fully informed decision whether to proceed on a motion to suppress in his case. Despite other officers being present during the defendant's confession, and unlike the circumstances of his codefendant's confession where only Detective Perry was present, he argues plea counsel should have investigated the matter properly.

¶ 23 Second, defendant argues that he was not advised of weaknesses in the State's case against him beyond what could be suppressed had such a motion been granted. In furtherance of this contention, defendant argues that he was not advised of, and his attorney did not investigate, his father's statement against him which was later recanted with a claim that it was coerced by the same officer, Detective Perry, who interrogated the defendant and his codefendant.

¶ 24    Thus, defendant contends that because he was not properly advised as to all relevant facts related to a possible motion to suppress and to the relative strength of the State's case against him, he was unable to properly weigh the case against himself, and that, had he been able to properly weigh his case, he would not have pled guilty and instead insisted on going to trial.

¶ 25    Because a defendant has a constitutional due process right that their plea of guilty be entered voluntarily, an attorney's conduct is deficient if the attorney failed to ensure that the defendant's guilty plea was entered voluntarily and intelligently. See *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *People v. Rissley*, 206 Ill. 2d 403, 457 (2003). To determine whether defendant was denied his right to effective assistance of counsel, we apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* standard, a defendant must show, first, that "counsel's representation fell below an objective standard of reasonableness" (*id.* at 688) and, second, that he was prejudiced such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*id.* at 694). Therefore, to satisfy the "prejudice" requirement in a plea proceeding, the defendant must show that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. *People v. Pugh*, 157 Ill. 2d 1, 15 (1993). To prevail on a claim of ineffective assistance, the defendant must satisfy both prongs of the *Strickland* test, and a failure to establish either prong precludes the finding of ineffective assistance of counsel. *People v. Yankaway*, 2025 IL 130207, ¶ 62.

¶ 26    Even assuming, *arguendo*, that we take as true the defendant's argument that counsel fell below the objective standard of reasonableness, we find that the defendant has not proven substantial prejudice as required under the second prong of *Strickland*.

11

¶ 27 A conclusory allegation by a defendant that he would not have pled guilty and instead insisted on a trial is insufficient to establish prejudice under *Strickland*. *People v. Hughes*, 2012 IL 112817, ¶ 64. Instead, the defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.* ¶ 65.

¶ 28 Here, the circuit court found in its written order denying the defendant's request for postconviction relief that his argument that he would have gone to trial rather than plead guilty if he were more fully advised regarding his options to fight the State's case to not be credible.

¶ 29 This finding is not against the manifest weight of evidence where, as here, the circuit court heard credible evidence during the hearing that: (1) defendant was subject to a maximum sentence of natural life in prison but the State had offered to recommend a sentence of only 20 years if defendant pled guilty to the charges; (2) it was standard practice for the State to withdraw offers if substantive pretrial motions were filed by a defendant; (3) there were differences between the defendant's case and his codefendant's case that meant that a similar outcome was not guaranteed if defendant did file a motion to suppress; (4) even if the motion to suppress were granted, the State could have still brought the case to trial using defendant's statements to Cotton Sr. and another individual, even though Cotton Sr. had attempted to recant his statement; (5) defendant's plea counsel believed it was not in the defendant's best interest to risk the revocation of the offer by filing motions; and (6) defendant's plea counsel had discussed all of his options, including his ability to file motions, with defendant before he pled, and defendant insisted that his plea counsel not file any motions because he wanted to accept the State's offer of 20 years.

¶ 30 Therefore, because the defendant has failed to establish the second prong of the *Strickland* test, we need not evaluate his claim under the first prong of *Strickland* as where there is no prejudice the defendant will not be able to establish his ineffective assistance of counsel claim

regardless of if his counsel's performance actually fell below the objective standard of reasonableness.

¶ 31                                    III. CONCLUSION

¶ 32    Therefore, we affirm the circuit court's judgment denying defendant's amended petition for postconviction relief where defendant was unable to establish that his counsel provided ineffective assistance under the standard set forth in *Strickland v. Washington*.


¶ 33    Affirmed.